## William Bonker v. The People.

*Solemnization of Unlawful Marriages—Cumulative Testimony—Guilty Knowledge.*

The Michigan statute (Comp. L., § 4729) makes it a misdemeanor for one to solemnize a marriage, knowing that he is not lawfully authorized to do so, or that there is a legal impediment thereto. *Held* to apply to marriages not authorized by law, as where the girl is under the age of consent.

Where a justice joined in marriage a girl who professed to be of the age of consent although she was apparently not, it was held competent to show that his family and her father's were neighbors and acquaintances, and that at the marriage he did not inquire for her parents, who were not present; these facts tended to show that he knew the marriage was unlawful.

The rule requiring the prosecution to call every attainable witness where testimony is needed to disclose any part of the transaction, is to prevent the suppression of evidence, and does not make it always necessary to call all witnesses, particularly where their testimony would be only cumulative, and the offense is not a crime of violence.

When guilty knowledge is an ingredient of the offense, there need not usually be direct proof of actual, positive knowledge, but the jury may infer it from suspicious circumstances, such as apparently intentional neglect to make inquiry before engaging in a doubtful transaction.

The fact of guilty knowledge should be left to the jury to determine from all the circumstances.

Error to Wayne.    Submitted April 10.    Decided June 12.

CRIMINAL INFORMATION under the statute against unlawful marriages.    The facts are in the opinion.

*Moore & Moore* and *J. L. Chipman,* for plaintiff in error.

Attorney General *Otto Kirchner,* for the People.

COOLEY, C. J. The defendant has been convicted on an information which charges that "Heretofore, to wit, on the 28th day of February, A. D. 1876, at the township of Huron, in said county of Wayne, one William Bonker, late of said township, being then and there a justice of the peace of said township, and in and for said county, unlawfully did undertake to join in marriage Frank Bogart and Ann Eliza Davis, she the said Ann Eliza Davis being then and there a female under the age of sixteen years, to wit: of the age of thirteen years, and not capable in law of contracting marriage; and the age of the said Ann Eliza Davis being then and there a legal impediment to the said proposed marriage; he, the said William Bonker, then and there and at the time he undertook to join the said

Frank Bogart and the said Ann Eliza Davis in marriage, well knowing that the said Ann Eliza Davis was then and there a female under the age of sixteen years, contrary to the form of the statute," etc.

On the trial the main facts appear to have been undisputed. The girl was the daughter of one Daniel T. Davis who lived in the same township with defendant, and the two had known each other for three or four years, and had had some business dealings of no great importance. A part of that time they resided within a mile of each other, and the girls of the two families seem to have been acquainted. The girl testified that she had known defendant about four years, and the record does not show that this fact was disputed by him. At the time of the marriage she was in the employ of one Hemstock, about forty rods from and in sight of her father's house. An arrangement was fixed up between Mr. and Mrs. Hemstock and Bogart for the marriage of the latter to the girl, and the defendant coming along in the road with one Nowland, Bogart went out and called him in to marry them. When he came in he asked the girl how old she was, and she replied, sixteen. Her testimony was that she made this statement under the instructions of the Hemstocks and Bogart, but they denied this. She was in fact but thirteen years of age. Without taking any precautions beyond this simple inquiry, and without the presence or knowledge of any of the girl's family, the defendant proceeded with the marriage ceremony. These facts, it must be conceded, make out a very gross case of abuse of official authority, and it remains to see whether any of the exceptions taken to the conviction can be supported.

I. It is claimed that the information makes out no case under the statute. The information was filed under § 4729 of the Compiled Laws, which provides that "If any person shall undertake to join others in marriage, knowing that he is not lawfully authorized so to do, or knowing of any legal impediment to the proposed marriage, he shall be deemed guilty," etc. The argument on the part of the defendant

·is, that an "impediment" is that only which absolutely precludes a marriage being formed; such as relationship within the prohibited degrees, or a previous marriage not dissolved; and that as the marriage of a party under the age of consent would not be void, but only voidable, the want of age could not constitute an impediment. This argument would apply equally well to a marriage accomplished by force or fraud,—such marriages being voidable only,—and would protect the magistrate though the facts were all known to him. We doubt the validity of the argument, and should be inclined to hold that whatever is in the way of a valid marriage must be understood to constitute such an impediment as the statute has in view. The statute authorizes certain marriages, and does not authorize others; it points out what shall prevent or impede them. But it is not necessary to rest the case upon this view, for when the statute does not authorize a certain marriage, a magistrate cannot be "authorized" ·to join the·persons in marriage. The age of consent in a female is, by the statute, fixed at sixteen years; and though the law, in view of the serious consequences that might follow from treating all marriages as void where one of the parties is under the age of consent, holds them to be voidable only, it nevertheless does not authorize them. Like a fraudulent marriage they are unauthorized, for consent is the first requisite in marriage, and in these cases the capacity to consent is withheld by law.

II. Exception was taken to the admission of evidence to show that the families of defendant and Davis were acquainted, and that at the time of the ceremony defendant made no inquiry for the girl's parents. This evidence bore strongly on the probability of defendant's knowledge that his act was unwarranted, and we have no doubt was properly received. It tended to show that he must have had some knowledge of the girl's age, and it put before the jury the extremely suspicious circumstance that in the immediate vicinity of her father's house he was willing, without the presence, and so far as he knew, the knowledge of her parents, to join in marriage a girl who, even if she

were sixteen, would be unfit to act in so important a matter upon her own judgment.

III. The third exception was to the refusal of the court to. require the prosecution to put upon the stand as witnesses for the people Mr. and Mrs. Hemstock, Bogart and Nowland. There was nothing in the case to indicate that Nowland could have given material evidence; it only appeared that he was in the road with defendant when the latter was called in; and that was no part of the *res gestæ*. The record discloses no fact that renders it at all material that defendant was. called in by one person rather than by another, or what was said in calling him in, or how he came to be present. The *res gestæ* began with his presence in the house. Evidence as to how or why he came to be there was proper as introductory or explanatory, but nothing depended on it. The claim that the others should have been called by the prosecution is made in reliance upon *Maher v. People*, 10 Mich., 212, and *Hurd v. People*, 25 Mich., 405. One of those cases was an information for murder, and the other for assault with intent to commit murder, and the principle deducible from them is that "the prosecutor in a criminal case is not at liberty, like a plaintiff in a civil case, to select out a part of an entire transaction which makes against the defendant, and then to put the defendant to the proof of the other part, so long as. it appears at all probable from the evidence that there may be any other part of the transaction undisclosed; especially if it appears to the court that the evidence of the other portion is attainable." " If the facts stated by [the witnesses] who are called, show *prima facie*, or even probable reason for believing that there are other parts of the transaction to which they have not testified, and which are likely to be known by other witnesses present at the transaction, then such other witnesses should be called by the prosecution if attainable."—25 Mich., 416, 417. These cases are really aimed at a suppression of evidence by management, and they do not decide, as is claimed, that all the witnesses to a transaction must necessarily be called by the prosecution: the justice of requiring

this must depend upon circumstances, and it would seldom be as manifest in cases of mere misdemeanor as in cases of higher offences, especially those accomplished by violence. But in this case there was no reason to suppose that the prosecution had failed to put all parts of the transaction before the jury by its evidence; and the testimony of other by-standers could only have been cumulative. Moreover the connection of the Hemstocks and Bogart with the affair was such as fairly to excuse their being called. They must have known a great wrong was being perpetrated, and they were assisting and one of them a principal in it. Had it been a crime of violence their connection with it was such as would have justified the State in making them parties defendant; and though this statute does not provide for punishing them, we cannot say that the court erred in not requiring the prosecution to give credit to their testimony by calling them. They were present in court, and the defendant had the benefit of their testimony afterwards; and if the court had any discretion in the premises, as we think it had, the discretion was not abused.

IV. A further question arises upon the instructions to the jury. One of them was "If you think from the appearance of the girl, and from the testimony in the case, that the defendant, although he could not have known positively what her age was, but if he had good reason to believe from all these facts that she was under the age of sixteen, then their verdict must be guilty." And again, that, if in the exercise of a reasonable discretion he had reason to believe she was not sixteen, then he must be deemed to have united them in marriage knowing there was a legal impediment. These charges are objected to as in effect making negligence the equivalent of guilty knowledge.

No doubt where guilty knowledge is an ingredient in the offense, the knowledge must be found; but actual, positive knowledge is not usually required. In many cases to require this would be to nullify the penal laws. The case of knowingly passing counterfeit money is an illustration; very often the guilty party has no actual knowledge of the spuri-

ous character of the paper, but he is put upon his guard by circumstances which, with felonious intent, he disregards. Another illustration is the case of receiving stolen goods knowing them to be stolen: the guilt is made out by circumstances which fall short of bringing home to the defendant actual knowledge. He buys perhaps of a notorious thief, under circumstances of secrecy and at a nominal price; and the jury rightfully hold that these circumstances apprise him that a felony must have been committed. *Andrews v. People*, 60 Ill., 354; *Schriedley v. State*, 23 Ohio St., 130. If by the statute now under construction actual personal knowledge is required, the statute may as well be repealed; for it can seldom be established even in the grossest cases. How many justices are likely to know the exact age of all the girls in their township approaching the age of consent? or even of all those in their immediate neighborhood, except as they rely upon reputation or family report? Or in how many can they testify of their own knowledge that a young man and young woman living as inmates of the same family and recognized as brother and sister, do in fact bear that relation to each other? or that one who comes to be married has not a wife living from whom he is not divorced? Indeed, in the great majority of cases one must obtain his knowledge as to the existence of legal impediments from common report; from the statements of third parties; from any sources, in fact, upon which individuals would rely in investigating for their own protection into such facts; and he would justly be deemed inexcusable if he should persistently shut his eyes to such facts as were apparent to every body else.

We think there is no doubt that in this case the jury would have been warranted in finding, on the facts which appear, that the defendant had knowledge of the impediment, had the instructions been such as the defendant insists they should be. One fact not hitherto stated would have been regarded as very significant, namely: that the defendant, although required by statute to examine one of the parties on oath, neglected to do so.—Comp. L., § 4726. This, in view of the extreme youth of the girl, was a very

significant fact, and looks like a careful avoidance of the proper means of information. Had he taken the proper evidence under oath and been deceived, perhaps he would have been justified, even though he had had reason to believe the age of consent had not been reached; but where he neglects the testimony which he is required to take, and pretends to rely upon the less satisfactory oral statement, which he is not required to take, the neglect may well be imputed to illegal intent.

But the question whether on the evidence the jury ought to have found that the defendant had guilty knowledge is not the same as the question presented here. We are not agreed that the charge of the circuit judge can be supported, though some of our number are inclined to think it may be. The better course unquestionably would have been for the circuit judge to have submitted all the facts to the jury, and to have allowed them to draw their own conclusions regarding the knowledge of the defendant that he was proceeding unlawfully. It is to be presumed that the jury would have dealt intelligently with the facts, and not permitted a reckless official to have set at naught with impunity the provisions of a statute which has for its object the prevention of unfit, immoral and scandalous marriages.

The circuit court will be advised to grant a new trial.

The other Justices concurred.