CLARK V. STATE.

CRIMINAL LAW: _Tresspass: Pulling down fence._

A defendant indicted for pulling down a fence, under sec. 1669 Mansf. Dig., which makes it a misdemeanor for one person " to pull down or break the fence, or leave open the gate of the farm, plantation or other inclosed ground, of another," cannot excuse the act by showing that it was committed through mistake as to the line between his own land and that on which the fence stood, when such mistake is the result of negligence on his part, in failing to use means obviously within his power, to ascertain the true boundary.

APPEAL from _Pulaski_ Circuit Court.

J. W. MARTIN, Judge.

_Sol. F. Clark_, for appellants.

Section 1669 _Mansf. Dig._ has no reference to a case like this. It was was intended for marauders and transient persons. who recklessly commit the acts referred to, and who have no interest in the premises injured. It is expressly confined to riders, rangers and hunters.

It is not even a tresspass for an adjoining proprietor to enter upon the land of another for the purpose of building a division fence. 60 _Barb._, (_N. Y._) 45; _Moak's Underhill on Torts,_ 361; 3 _Waits Ac. & Def., p._ 238–9; 28 _Ala.,_ 385; 57 _N. Y.,_ 657. And to commit this offense a person must be a tresspasser. 3 _Jones_ (_N. C._) _Law,_ 375. Nor does the statute apply to a case where the taking down of the fence was done under a claim of right. 5 _Gratt,_ 657; 26 _Penn. St.,_ (2 _Casey_) 187.

Where a party by mistake builds a fence on another's land, he does not lose his fence but may take it off in a reasonable time. 44 _Mo.,_ 368.

There is no proof that the fence taken down was on Hobs' land.

*Blackwood & Williams,* for the state.

Section 1669 does not require the act to be *wilful* or malicious, and no malice was necessary to convict. The act is *prohibited* without reference to malice. *Jeffries v. Hargis,* 50 *Ark.,* 65; 43 *Ark.,* 284; 36 *Id.,* 151; 37 *Id.,* 219; *Ib.,* 108.

It is immaterial where the true line was. The fence had been there for 20 years. No legal survey can be made without notice to adjoining owners. *Mansf. Dig., sec.* 1171. This was not done. It was Clark's duty to know where the line was. *Jeffries v. Hargis,* 50 *Ark.,* 65.

There is no pretense that this was a partition fence, so as to bring it within 37 *Ark.,* 122. No man can go on another's land and, *nolens volens,* build a partition fence. *Mansf. Dig., sec.* 3654. It must be on the line.

The cases cited by appellant are under statutes requiring the act to be done "wilfully and knowingly," and "maliciously" or voluntarily.

BATTLE, J. So much of the statute as defines the offense of which appellants were accused, reads as follows: "If any person * * * * shall pull down or break the fence, or leave open the gate of the farm, plantation or other inclosed ground of another, the party so offending shall be guilty of a misdemeanor," etc. It is contended that appellants are not guilty of this offense, even if the fence pulled down was on Hobbs' land, because they pulled it down believing it was on the land of Clark, and under a claim of right. If it be conceded that a guilty knowledge or intent is necessary to

constitute the offense charged, this contention raises a question as to how far or under what circumstances a mistake of fact will excuse an act made punishable by statute.

" Carefulness," says Mr. Bishop, " is one of the duties of life; and, consequently, a man may be responsible for mistaken facts, because he did not use proper caution, or make due inquiry ; so that acts performed under a mistake of fact thus produced are, punishable." " All admit," says he, " that a man has no right to act while his mind is in a state of 'ignorance.'" If, through carelessness, negligence, or indifference, he fails to use obvious means at his command to inform himself, he is, as a general rule, not excused from what he does through a mistake of fact. *Bishop on Statutory Crimes, secs. 664, note 6 to sec. 1022; Com. v, Mash, 7 Metc., 472; Bishop's Criminal Law, I Vol., sec. 324, 301, 310; Wharton's Criminal Law, I Vol., (9th Ed.), sec. 89,* and authorities cited ; *Bonker v. People,* 37 *Mich.,* 4.

This cause was submitted to the court sitting as a jury. No declarations of law were asked or made. The court found appellants guilty. The only question here is, was the evidence adduced in the trial sufficient to sustain the finding of the court?

The evidence was sufficient to sustain the court in finding that the fence pulled down was on the land of Hobbs. It had been standing where it was when pulled down for twenty years, and the joint survey of both surveyors who fixed the line showed it was on Hobbs' land ; and Hobbs was in possession. The evidence clearly shows it was not a partition fence, and had never been regarded as such, and that Clark had never claimed it. In 1867 a lane was opened along the line between the Clark and Hobbs lands under an agreement between the owners of the lands on both sides of the line that each would give ten feet on his side. It seems, although it is not positively stated, that a lane was given under the

agreement, and fences were made on both sides of the lane. It was used by all parties concerned, under the agreement, ever since that time and until it was obstructed by Clark, a period of about twenty years. For three years Hobbs occupied [Clark's land as a tenant. During that time Clark's fence on his side of the lane disappeared, but Hobbs' was kept up. Hobbs made gates at each end of the lane to protect Clark's land while he was cultivating it, and kept them up until he left, when he took them down and exposed Clark's land " to the open public streets and range." Clark then had the gates replaced, when Hobbs cut them down, carried them away, and appropriated them to his own use. Clark then undertook to build a fence on his side of the line In order to do so he caused the county surveyor to run a line as the boundary between him and Hobbs, and directed appellant, Edmonson, to build the fence close to the line so run, on his side of it. At the time he gave this direction he knew where the line he had caused to be run was, and that it would be necessary for Edmonson to tear down a part of Hobbs' fence in order to build the fence as he was ordered to do. In complying with this direction Edmonson pulled down about seventy-five panels of Hobbs' fence, built a fence for Clark, and left Hobbs' farm " open to the range." The fence pulled or thrown down extended from one to six feet over the line surveyed, on Clark's side. Hobbs cut down a part of the fence made by Clark. Clark then caused the surveyor who ran a line in 1867 for the lane, and the county surveyor, to make a joint survey of the boundary line; and it was ascertained by their survey that Clark had built his fence about eight feet on Hobb's land. Clark then built his fence on the second line, believing it was the true line. No notice was given to Hobbs that either of the surveys would be made; and he was not bound by either of them. In acting as he did, Clark failed to use the obvious.

means within his power to ascertain and fix the boundary line between him and Hobbs, but sought to establish it without the consent of Hobbs and without giving notice; and closed a lane which had been opened and used under an agreement for about twenty years. He himself had recognized the lane and acquiesced in the use of it as such until Hobbs cut his gates down. His acts were well calculated to bring about the evils the statute he was accused of violating was, doubtless, intended to prevent, that is, the disturbance of the public peace and the exposure of inclosed lands.

We think the evidence was sufficient to sustain the finding of the court. It is unnecessary, and we do not undertake to decide whether or not a guilty knowledge or intent is necessary to constitute the offense of which appellants were accused. Judgment affirmed.