## PEOPLE v LUTHER

1. CRIMINAL LAW—TRIAL—JURY—DELIBERATION—QUESTIONING JU-
RORS—NUMERICAL DIVISION.

   Trial judges are prohibited from asking any questions of jurors
   the answer to which might reasonably be expected to disclose
   the numerical division of the jury in a criminal trial; therefore
   it is strongly urged upon the trial bench that this be explained
   before any necessary and proper questioning regarding the
   state of the jury's deliberations begins.

2. CRIMINAL LAW—TRIAL—JURY—DELIBERATION—PROBABILITY OF
VERDICT—QUESTIONING JURORS—NUMERICAL DIVISION.

   If the orderly supervision of a docket requires that the trial court
   inform itself as to the probability of a verdict in a criminal
   trial by some ascertainable time, the procedure to be followed
   is to return the jury to the jury room and direct the foreman to
   poll the jury in private and then advise the court only that a
   majority believes a verdict can be reached, or a majority does
   not.

3. CRIMINAL LAW—TRIAL—JURY—DELIBERATION—QUESTIONING JU-
RORS—NUMERICAL DIVISION.

   A judge's questioning jurors in a criminal trial regarding the
   state of their deliberations was not reversible error as coercive
   questioning where there was no explicit revelation of the
   numerical division of the jury.

4. ESCAPE—DEFENSES—DURESS—HOMOSEXUAL ATTACKS—INSTRUC-
TIONS TO JURY.

   Instructing a jury that a defendant's flight from prison to avoid
   homosexual attacks was "not a defense" to the offense of prison
   escape was error despite later modifications and restatements
   by the trial judge concerning the defense of duress where a
   defendant's whole defense was that he escaped to avoid such
   homosexual attacks.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 53 Am Jur, Trial § 156 et seq.
[4] 27 Am Jur 2d, Escape, Prison Breaking and Rescue § 18.

Appeal from Jackson, Charles J. Falahee, J. Submitted Division 2 April 9, 1974, at Lansing. (Docket No. 15879.) Decided May 31, 1974. Leave to appeal applied for.

Herman Luther was convicted of prison escape. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *James M. Justin,* Assistant Prosecuting Attorney, for the people.

*Norris J. Thomas, Jr.,* and *Richard L. Ruby,* Assistants State Appellate Defender, for defendant.

Before: McGREGOR, P. J., and R. B. BURNS and O'HARA,* JJ.

PER CURIAM. Defendant was jury convicted of prison escape. MCLA 750.193; MSA 28.390.

While deliberations were still in progress the jury was returned to the courtroom and the following exchange took place between the jurors and the judge:

"*The Court:* You may be seated, jurors.

"Have you chosen a foreman or forelady?

"(Juror Number 12, Herbert C. Kelly, raised his right hand.)

"*The foreman of the jury:* Yes, your Honor.

"*The Court:* Yes, sir, Mr. Kelly, when it gets to be this time of night we have to try to inquire of the jury whether you're close to a verdict, and if you're not, we'd probably recess and let you come back tomorrow morning to resume your deliberations.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

"Do you feel it's possible to reach a verdict by five o'clock?

*"The foreman of the jury* (Herbert C. Kelly—Juror Number 12): No, sir, we're not in agreement.

*"The Court:* How many of the jurors think you can't reach a verdict by five?

"(Juror Number 5 and Juror Number 12 raised their right hand.)

*"The Court:* How many think you can?

"(Several jurors raised their right hand.)

*"The Court:* All but two.

"(Addressing the foreman of the jury): Mr. Kelly, do you still think you can't?

*"The foreman of the jury:* Perhaps we can.

*"The Court:* Well, let's try it.

*"The foreman of the jury:* Okay.

"(The jury retired to their jury room at 4:44 o'clock p.m., Wednesday, August 30, 1972, and resumed deliberating upon their verdict.)

\* \* \*

"(The jury buzzed at 4:59 o'clock p.m. and requested the Court Officer to deliver the following note to the Court:)

" 'We have reached a verdict.' "

The defendant claims this was coercive questioning and rendered the verdict a nullity.

There has been so much written on this subject that a case by case comparison of holdings pro and con would reveal so many nuances of phraseology that no precise precedential rule could evolve. Federal versus state authority is at hopeless variance. We undertake the well-nigh impossible: a short rule for the guidance of the trial bench.

Trial judges are hereafter prohibited from asking any questions of jurors the answer to which might reasonably be expected to disclose the numerical division of the jury. Hence, it is strongly urged upon the trial bench that this be explained

before any necessary and proper questioning regarding the state of the jury's deliberations begins.

It is to be noted in this case that no numerical division of the jury was revealed. Two jurors expressed the view that a verdict could not be reached by a given time. The balance had a contrary view or expressed none at all. If the orderly supervision of a docket requires that the trial court inform itself as to the probability of a verdict by some ascertainable time the procedure to be followed is to return the jury to the jury room, and direct the foreman to poll the jury in private and then advise the court only that a majority of the jury believes a verdict can be reached or a majority does not. The only virtue this solution has is that it establishes uniformity, unless of course another panel of this Court takes a contrary view or the Supreme Court speaks with finality. In this case we find no explicit revelation of the numerical division of the jury and hence no reversible error.

Next defendant complains that the instruction as to his defense of duress was confusing to the point of being reversibly erroneous. We quote the excerpt from the charge:

"Now, jurors, I instruct you that it is not a defense to escaping prison that the defendant fled to avoid homosexual attacks by other prisoners.

"However, you may consider as a valid defense whether the defendant escaped while being under. duress.

"And I instruct you in reference to duress that an act which might otherwise constitute a crime may be excused on the ground that it was done under compulsion or duress, but the compulsion must be present, imminent and impending, and of such a nature as to induce a well-founded apprehension of death, or serious bodily

harm, if the act is not done. Threats of future injury will not excuse an offense.

"I instruct you, jurors, that in reference to the defense of the defendant concerning duress, the people have the burden of proof in this case to prove that the defendant did not leave Camp Waterloo under duress."

The choice of language in the first paragraph of the excerpt is, to say the least, unfortunate from the standpoint of the defendant, whose whole defense was that that was exactly why he left. To tell the jury flatly that to do so was *"not a defense"* could not be righted by the modifications or restatements. The error was of that gravity as to in legal effect deny the defendant a fair trial.

The conviction is reversed.