PEOPLE v ADAN

Docket No. 77-1566. Submitted February 7, 1978, at Lansing.—Decided May 10, 1978.

Alberto G. Adan was convicted in Midland Circuit Court, James R. Rood, J., of the unlawful manufacture of marijuana. Defendant appeals contending that it was error for the trial court to allow the prosecution on cross-examination to ask him over objection if he ever cultivated marijuana plants at or near his residence. Defendant denied that he had done so. The people called a rebuttal witness who testified he found marijuana plants on defendant's porch and marijuana seeds in his apartment and the jury was also told that defendant had pled guilty to possession of marijuana. The trial court admitted this rebuttal testimony after ruling that it was admissible to impeach defendant and that it had a bearing on potential motive, intent, scheme or design. *Held:*

Evidence of a defendant's misconduct other than the charged offense is only admissible where there is a showing that the facts or circumstances of other bad acts are probative of the defendant's motive, intent, absence of mistake or accident, scheme, plan or system in committing the charged offense. Where the requisite showing is not made the admission of such testimony is error. The people's failure to make the requisite showing of a connection with the charged offense and the admission of the rebuttal testimony constituted error. Such error, as in this case, is reversible on appeal where the court

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 320, 321.
    Admissibility at trial of criminal case, of evidence of defendant's criminal acts other than those charged—Supreme Court cases. 93 L Ed 185.

[2, 3] 29 Am Jur 2d, Evidence §§ 320–326.

[4] 5 Am Jur 2d, Appeal and Error §§ 776–802.
    Supreme Court cases determining whether admission of evidence at criminal trial in violation of Federal constitutional rule is prejudicial error or harmless error. 31 L Ed 2d 921.

can say that it is reasonably possible that in a trial free of the error even one juror might have voted to acquit the defendant.

Reversed and remanded.

1. CRIMINAL LAW—EVIDENCE—MISDEMEANOR CONVICTIONS—ADMISSIBILITY—IMPEACHMENT—STATUTES.

Misdemeanor convictions may not be used for the purpose of impeachment, but misdemeanor convictions may be admissible as evidence of similar acts (MCL 768.27, MSA 28.1050).

2. CRIMINAL LAW—EVIDENCE—OTHER BAD ACTS—ADMISSIBILITY—REQUIREMENTS—STATUTES.

Evidence of a defendant's misconduct other than the charged offense is only admissible at trial if it satisfied judicially-imposed requirements: (1) there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced, (2) there must be some special circumstances of the misconduct which tend to prove motive, intent, the absence of mistake or accident, or that there was a common scheme, plan or system with the charged offense, and (3) defendant's motive, intent, absence of mistake or accident, scheme, plan or system must be material to the determination of defendant's guilt of the charged offense (MCL 768.27; MSA 28.1050).

3. CRIMINAL LAW—EVIDENCE—OTHER BAD ACTS—MOTIVE—INTENT MISTAKE—SCHEME PLAN SYSTEM—ADMISSIBILITY—APPEAL AND ERROR.

The facts or circumstances of other bad acts must be probative of a defendant's motive, intent, absence of mistake or accident, scheme, plan or system in committing the charged offense before such evidence is admissible and where the requisite showing is not made, the admission of such testimony constitutes error.

4. APPEAL AND ERROR—CRIMINAL LAW—HARMLESS ERROR—REVERSIBLE ERROR—JURY.

The standards for determining whether error committed during a criminal trial is reversible on appeal or merely harmless are: (1) was the error so offensive to the maintenance of a sound judicial system as to require reversal, and (2) if not, was the error harmless beyond a reasonable doubt; an error is not harmless where it is reasonably possible that in a trial free of the error even one juror might have voted to acquit the defendant.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, *Doyle A. Rowland,* Prosecuting Attorney, and *Gerald L. White,* Chief Assistant Prosecuting Attorney, for the people.

*F. Martin Tieber,* Assistant State Appellate Defender, for defendant on appeal.

Before: N. J. KAUFMAN, P. J., and D. E. HOLBROOK, Jr. and D. F. WALSH, JJ.

PER CURIAM. Defendant was convicted of unlawful manufacture of marijuana, MCL 335.341(1)(c); MSA 18.1070(41)(1)(c). Sentenced to two years' probation with the first 30 days to be spent in the county jail, defendant appeals as of right.

On appeal, defendant raises seven issues—one of which is dispositive.

The prosecutor's case against defendant comprised of the following. A Midland County Sheriff's Department Sergeant, Mark Bush, observed defendant and Nancy Jo Morrison drive up to the area he had under observation. Bush testified that defendant got out of the car with Ms. Morrison and checked some plants which were growing in a patch near where they had parked. He further testified that defendant then took some material from a bag he was carrying and packed it around the base of the plants. Bush recalled that he then walked over to where the two were standing and talked to Ms. Morrison for a short while. Bush then testified that when he started walking toward defendant, Ms. Morrison shouted that there was a police officer present and defendant discarded the bag which contained the material he had packed around the plants. Bush said that he retrieved the bag and placed both defendant and Ms. Morrison under arrest. The bag and plants were confiscated.

Bush also stated that he did not see either defendant plant anything and he did not know who planted the confiscated plants.

At trial, Bush described the plants as marijuana —which he had seen before. He stated that he believed that the confiscated bag contained fertilizer.

The prosecution presented other evidence.[1] Then, the defense called defendant as its first witness. He testified that he went to pick berries at the place where he was later apprehended. Defendant denied planting, cultivating or fertilizing any of the marijuana plants which were found in the area. He further testified that the bag of fertilizer was already at the scene when he arrived.[2]

On cross-examination, defendant was asked, over objection, if he "ever cultivated marijuana plants at or near [his] residence". The trial court indicated it would "allow the testimony as bearing on the design, plan, scheme, so forth". To the jury, the trial court explained:

"I will permit the asking of the question. I will say to the jury that the Court is allowing evidence here or at least questions as to previous knowledge or previous possible—I don't know exactly what the question is going to be nor what the answer is going to be, but such questions are permissible for the purpose of showing motive, intent, scheme or design. In other words, in connection with the offense that's charged here, evidence of other like type of things are admissible for

---

[1] An expert witness testified that his analysis of the confiscated plants indicated that they were marijuana. Additionally, the officer who impounded defendant's vehicle stated that the confiscated plants appeared to be marijuana.

[2] We disapprove of the prosecution's characterization of the substance of the bag as "fertilizer", without either having the substance analyzed or qualifying Bush as an expert for purposes of identification of fertilizer. Defendant may have characterized the bag as fertilizer precisely because Bush had so testified.

that purpose. They are not admissible, however, for the purpose of showing his guilt of this particular offense."

Defendant denied the allegation and the defense rested.

The prosecutor then called as a rebuttal witness, Detective James Wesolowski. Detective Wesolowski testified outside the presence of the jury so that the trial court could rule on the admissibility of his testimony.

Wesolowski testified that on May 22, 1975, he found marijuana plants growing on the porch of defendant's residence. The detective stated that he then went up to the apartment. Upon admittance, he stated that he noticed an ashtray with marijuana seeds in it. Detective Wesolowski testified that after a positive field test, he arrested defendant and Ms. Morrison. Eventually, they both pleaded guilty to possession of marijuana.

The trial court admitted the testimony after ruling that it was also admissible to impeach defendant as well as bearing on potential motive, intent, scheme or design.

On appeal, defendant renews his objection to the admissibility of the Wesolowski rebuttal testimony. Unless the testimony, including that of the misdemeanor conviction for possession of marijuana, is somehow admissible as "similar acts" evidence, its inclusion was error. See *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), forbidding the use of misdemeanor convictions solely for the purpose of impeachment. We believe that to the extent defendant's objection goes to "similar acts" testimony, this issue is controlled by *People v Nathaniel Wilkins,* 82 Mich App 260; 266 NW2d 781 (1978). *Wilkins* sets out the analytical process to be followed in determining the admissibility of

evidence of this type. Application of that process to the facts of this case leads inexorably to the conclusion that the rebuttal testimony of Detective Wesolowski concerning the May 22, 1975, incident and its aftermath and the initial question to defendant—which prompted the Wesolowski rebuttal —should not have been allowed into evidence.

Initially for a proper foundation to our discussion of similar acts, it is instructive to note *Wilkins,* 82 Mich App at 265:

"In Michigan, evidence of a defendant's other bad acts is generally inadmissible because its probative value is outweighed by the likelihood that it will prejudice the jury against the defendant, preventing an objective determination of the disputed factual issues. *People v Oliphant,* 399 Mich 472; 250 NW2d 443 (1976), *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973).

" 'This rule of law guards against convicting an accused person because he is a bad man. Barring such evidence prevents the trier of fact from inferring that the accused person is guilty of the charged offense because he has committed other similar acts or crimes.' *People v Matthews,* 17 Mich App 48, 52; 169 NW2d 138 (1969)."

*Wilkins* further notes that "a limited number of statutory and judicial exceptions" have developed. As in *Wilkins, supra,* this case involves the exceptions enumerated in MCL 768.27; MSA 28.1050:

" 'In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contempora-

neous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant.' " 82 Mich App at 266.

"Similar acts" evidence, though, is only admissible if it satisfies judicially-imposed requirements, catalogued in *Wilkins, supra:* 1) there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced, 2) there must be some special circumstances of the prior bad act which tends to prove one of the statutory items, and 3) defendant's motive, intent, absence of mistake or accident, scheme, plan or system must be material to the determination of defendant's guilt of the charged offense.

Although we find that the first requirement was met here, we must conclude that the nature of the proposed evidence was not in compliance with the second requirement. Regarding that requirement, *Wilkins, supra,* offers the following example:

"* * * if a defendant were charged with robbery, another robbery committed by the defendant would not be admissible to prove intent merely because it also involved specific intent to rob." 82 Mich App at 267.

This case is but a factual variation on the *Wilkins* hypothetical. One incident, arguably involved with marijuana cultivation, is being used to show defendant's inclination to commit the charged offense. Thus, we quote with approval from *Wilkins, supra,* 82 Mich App at 267:

"The law requires an additional showing that the facts or circumstances of the other bad acts are probative of the defendant's motive, intent, absence of mistake or accident, scheme, plan or system *in committing*

*the charged offense."* (Footnote omitted; emphasis in original.)

The requisite showing was not made here. Thus, as in *Wilkins, supra,* fn 4:

"The result of admitting such evidence without the requisite connection with the charged offense is to admit precisely the kind of evidence condemned in the cases quoted at the beginning of this discussion, *i.e.,* evidence relevant only to the defendant's propensity to commit the offense. McCormick, Evidence (1972), § 190, at 453 (2d ed), Stone, *The Rule of Exclusion of Similar Fact* Evidence America, 51 Harv L Rev 988, 1007 (1938)."

Therefore, the admission of testimony regarding the May 22 incident constituted error on the part of the trial court.

Having found error on the part of the trial court in admitting testimony of the May 22 incident and its legal aftermath, it is still necessary to determine whether the error requires reversal. *Wilkins, supra,* at 272, notes:

"The pertinent standard involves a dual inquiry: (1) Was the error so offensive to the maintenance of a sound judicial system as to require reversal? (2) If not, was the error harmless beyond a reasonable doubt? *People v Sherman Hall,* 77 Mich App 456; 258 NW2d 517 (1977)."

We conclude for the reasons stated in *Wilkins, supra,* that the error was not so intrinsically offensive to the maintenance of a sound judicial system as to require reversal.

However, we cannot find the error harmless beyond a reasonable doubt. We quote with approval this Court's construction of the phrase in

*People v Christensen,* 64 Mich App 23, 33; 235 NW2d 50 (1975):

"If it is reasonably possible that in a trial free of the errors complained of, even one juror might have voted to acquit the defendant, then the error was not harmless, and the defendant must be retried."

Without the rebuttal testimony, the prosecution's case against defendant is largely limited to the testimony of the arresting officer. We cannot find his testimony (which included the admission that he did not see either defendant plant anything) so persuasive that we can conclude that not even one juror might have voted to acquit' had the assailed testimony not been admitted.

Thus, this case must be reversed and remanded to the trial court for a new trial. Resolution of the above issue being dispositive, it is unnecessary to discuss the remaining issues raised on appeal.

Reversed and remanded.