PEOPLE v DIETRICH

PEOPLE v COLE

Docket Nos. 19792, 23417. Submitted June 7, 1978, at Grand Rapids.
—Decided November 27, 1978. Leave to appeal applied for.

Lawrence E. Dietrich and Terry L. Cole, also known as Terry
Letts, were each convicted of first-degree murder in the Kent
Circuit Court, John T. Letts, J. Defendants appealed. On ap-
peal, the cases were consolidated and the Court of Appeals
remanded to the trial court for an evidentiary hearing on
reports that the prosecution's witnesses had received monetary
rewards from various organizations as a result of their furnish-
ing information and testimony. On remand, the trial court
found that the prosecutor did not have a duty to disclose this
information and denied the defendants' motions for new trials.
The two consolidated cases were then heard and decided by the
Court of Appeals. *Held:*

1. The trial judge's findings that the witnesses were not
aware of the rewards until after defendant Dietrich's trial and,
therefore, did not testify with an expectation of consideration
were not clearly erroneous.

2. The prosecutor in Dietrich's trial was not under a duty to

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 12] 81 Am Jur 2d, Witnesses §§ 23, 25, 27, 551, 554.
[2] 63 Am Jur 2d, Prosecuting Attorneys § 27.
[3] 29 Am Jur 2d, Evidence § 661.
[4] 29 Am Jur 2d, Evidence § 699.
[5] 29 Am Jur 2d, Evidence § 320.
[6] 29 Am Jur 2d, Evidence §§ 321, 333.
[7] 81 Am Jur 2d, Witnesses §§ 581, 582.
[8] 40 Am Jur 2d, Homicide §§ 559, 560.
[9] 40 Am Jur 2d, Homicide §§ 44-46.
[10, 18] 75 Am Jur 2d, Trial §§ 876, 877.
[11, 16] 40 Am Jur 2d, Homicide § 525.
[13] 75 Am Jur 2d, Trial §§ 754-757.
[14] 81 Am Jur 2d, Witnesses §§ 523-526.
[15] 40 Am Jur 2d, Homicide §§ 45, 50, 51, 269.
[17] 75 Am Jur 2d, Trial §§ 1000, 1004, 1058.
[19] 40 Am Jur 2d, Homicide §§ 45, 46, 269.

disclose the information about possible rewards since none of the witnesses knew of the rewards before testifying.

3. Testimony regarding a conversation between the defendants and a third party the morning after the robbery was admissible as an adoptive admission by defendant Dietrich since he adopted and assented to Cole's statements during the conversation and denied or corrected those portions of Cole's statements which he thought were untrue.

4. The prosecutor's attempt to introduce a statement into evidence made by defendant Dietrich in which he admitted his involvement in another robbery was harmless error where Dietrich's objection to the introduction of this evidence at trial was sustained, Dietrich did not request a special curative instruction or make a motion for a mistrial, and the jury was instructed to consider only the evidence produced in court.

5. The trial court did not err reversibly in denying Dietrich's motion to exclude his prior convictions from being admitted into evidence since the record indicates that the judge had sufficient information to properly exercise his discretion.

6. Any error in admitting evidence of Dietrich's prior arrest without proof of a conviction was not reversible error since the admission of such evidence was the result of the defendant's unresponsive answer to a proper question by the prosecutor, there is no indication that the prosecutor was deliberately attempting to interject inadmissible evidence, and the defendant did not object at trial to the admission of this testimony.

7. Second-degree murder is a necessarily lesser included offense of felony-murder.

8. An instruction on a necessarily lesser included offense must be given upon request. The Supreme Court holding providing this precedent is extended to apply in these cases since the issue was preserved by a proper and timely request for an instruction on second-degree murder and the judgment of conviction is pending on an appeal as of right.

9. The retrial of defendant Dietrich is not required, although the trial court failed to give the requested instruction on the necessarily included offense of second-degree murder. Instead, the case is remanded for entry of a judgment of conviction of the lesser included offense of second-degree murder and for resentencing, or, upon motion of the prosecutor prior to resentencing the judgment of conviction of second-degree murder should be vacated and a new trial on the felony-murder charge granted.

10. The prosecutor did not commit reversible error by failing

to disclose to the jury the fact that he knew certain witnesses at defendant Cole's trial had been paid monetary rewards as a result of their participation in the earlier trial of defendant Dietrich since there is no evidence that any of the witnesses had any expectation of another or further rewards for their testimony in Cole's trial, and there is no indication that these past rewards would motivate any of the witnesses to give false testimony.

11. The prosecutor's reference in his closing argument to defendant Cole's failure to question some of the witnesses who were present at the trial about some of the factual issues in the case did not impermissibly shift the burden of proof onto the defendant since the jury was properly instructed on the burden of proof and the statement was not directed at defendant's refusal to testify but rather to facts that could have been within the knowledge of persons other than the defendant.

12. The trial court did not err in allowing testimony regarding defendant Cole's use of an alias into evidence for impeachment purposes since such evidence was highly probative of the defendant's credibility and not highly inflammatory or prejudicial to the defendant.

13. The trial court properly denied defendant Cole's request for an instruction requiring the jury to find that the defendant had an actual intention of killing the victim of his robbery in order to convict him of first-degree felony-murder; felony-murder does not require an actual intention to kill the victim, rather, malice aforethought is all that is required.

14. The trial court erred by instructing the jury to find defendant Cole guilty of felony-murder if the killing of the victim occurred during the commission of a robbery, since such instruction took the issue of malice aforethought from the jury. Therefore, defendant Cole's felony-murder conviction should be reversed and the case remanded for entry of a judgment of conviction of the lesser included offense of manslaughter and resentencing, or, upon motion of the prosecutor prior to resentencing the judgment of conviction of manslaughter should be vacated and a new trial on the felony-murder charge granted.

15. It is reversible error for a court to inquire into the numerical division among the jurors, but it is not error for a trial judge to have his clerk inquire into whether the jury thought they might agree on a verdict before the day was over in order to properly supervise his docket and make any required arrangements.

16. It was harmless error where the jury foreman voluntarily

told the court clerk, without being requested, the numerical division among the jurors when asked whether the jury thought they might agree on a verdict before the day was over, since the clerk did not interject any extraneous or prejudicial matter into his conversation with the foreman, did not state his opinion, did not give instructions or refer to the evidence, the foreman did not indicate which way the majority and minority were leaning, and since there is no reasonable possibility that the disclosure of this information to the clerk aided in convincing even one undecided juror of defendant's guilt beyond a reasonable doubt.

Reversed and remanded for further proceedings.

V. J. BRENNAN, J., concurred in the reversal of defendants' convictions for first-degree felony-murder and the remand for entry of convictions for lesser homicide offenses since the trial court refused a proper and timely request for an instruction on the necessarily lesser included offense of second-degree murder, but he would specifically limit application of the Supreme Court case providing precedent for such action to cases, like this one, which were in the process of appeal on the date of the precedent setting opinion. He would dissent from that part of the majority's opinion holding the trial court's instruction that if the killing was found to have occurred during a robbery then the defendant could be found guilty of felony-murder eliminated the element of malice from the jury's consideration, since the element of malice sufficient to elevate the killing to felony-murder is established by a finding that the killing occurred in the perpetration of one of the enumerated felonies. He would reduce the convictions to second-degree murder in both cases.

OPINION OF THE COURT

1. WITNESSES—CRIMINAL LAW—MONETARY REWARDS—APPEAL AND ERROR—REASONABLE DOUBTS—EXPECTATION OF CONSIDERATION.

A trial judge's finding that witnesses at a defendant's trial were not aware until after the trial of the fact that monetary rewards were to be given and, therefore, did not testify with an expectation of consideration, was not clearly erroneous and, therefore, will not be set aside where none of the witnesses knew of the rewards before testifying and thus the prosecutor was not under a duty to disclose such information, where the omitted information, if introduced, would not have raised a reasonable doubt about the defendant's guilt, and where it was not a case in which it would be atypical for a witness not to have an expectation of consideration for his cooperation.

2. CRIMINAL LAW—DISTRICT AND PROSECUTING ATTORNEYS—TRIER OF FACT—INCRIMINATING EVIDENCE—EXCULPATING EVIDENCE—IMPEACHING EVIDENCE.

A prosecutor is obligated to present the trier of fact with incriminating evidence against the defendant and any material evidence exculpating the defendant; this duty to disclose also extends to material impeaching information.

3. CRIMINAL LAW—EVIDENCE—ADOPTIVE ADMISSIONS.

The use of adoptive admissions in criminal cases is not favored, however, adoptive admissions are admissible when it clearly appears that the defendant understood and unambiguously assented to the statement made.

4. WITNESSES—CRIMINAL LAW—ADOPTIVE ADMISSIONS—SILENCE.

Testimony by a witness regarding a conversation which took place between herself and co-defendants the morning after the crime charged was admissible as an adoptive admission at the trial of one of the co-defendants where that co-defendant was not silent during the conversation, corrected statements made by his co-defendant which he thought were incorrect and the facts support a conclusion that the defendant adopted and/or acquiesced in the statements.

5. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES—ADMISSIBILITY.

Evidence which shows or tends to show that the accused has committed another offense wholly independent of and unconnected with that offense for which he is on trial is generally irrelevant and inadmissible.

6. APPEAL AND ERROR—EVIDENCE—HOMICIDE—FELONY-MURDER—COURT'S DISCRETION—ABUSE OF DISCRETION.

The Court of Appeals will not make a finding that a trial judge abused his discretion in denying a defendant's motion to have his prior convictions excluded from evidence in a trial for felony-murder where it is shown that the judge had sufficient information concerning the defendant's criminal record to effectively exercise his discretion.

7. CRIMINAL LAW—IMPEACHMENT—MISDEMEANOR CONVICTIONS—MUNICIPAL ORDINANCE CONVICTIONS.

It is reversible error to impeach a criminal defendant with misdemeanor and municipal ordinance convictions.

8. APPEAL AND ERROR—HOMICIDE—FELONY-MURDER—EVIDENCE—PRIOR ARRESTS.

A trial court did not commit reversible error, in a trial for felony-

murder, in admitting evidence of the prior arrest of the defend-
ant without proof of a conviction where such evidence was
introduced by means of the defendant's unresponsive answer to
a proper question with no indication that the prosecutor was
deliberately attempting to interject inadmissible evidence into
the trial, where the defendant did not object at trial to the
admission of the testimony, and where, considering the other
evidence against the defendant, there is no reasonable possibil-
ity that the admission of this testimony resulted in a miscar-
riage of justice.

9. CRIMINAL LAW—HOMICIDE—SECOND-DEGREE MURDER—FELONY-
    MURDER—LESSER INCLUDED OFFENSES.
    Second-degree murder is a necessarily lesser included offense of
    felony-murder.

10. CRIMINAL LAW—TRIAL—LESSER INCLUDED OFFENSES—INSTRUC-
    TIONS—REQUESTED INSTRUCTIONS.
    An instruction on a necessarily lesser included offense must be
    given in a criminal trial when requested.

11. HOMICIDE—FIRST-DEGREE MURDER—FELONY-MURDER—INSTRUC-
    TIONS TO JURY.
    A conviction for first-degree felony-murder should be reversed
    and the case remanded for entry of a judgment of conviction of
    second-degree murder, or, upon motion of the prosecutor, a new
    trial for felony-murder, where the trial court refused a proper
    and timely request to instruct the jury on the lesser necessarily
    included offense of second-degree murder and where the issue
    was preserved by such a request.

12. WITNESSES—CRIMINAL LAW—MONETARY REWARDS—FALSE TESTI-
    MONY—PROSECUTOR'S DUTY TO DISCLOSE.
    The fact that a monetary reward was offered and paid to some
    witnesses who testified at the earlier trial of one accomplice
    would not, absent evidence to the contrary, motivate that same
    witness, or another witness, to give false testimony at the trial
    of another accomplice; reversible error does not result where a
    prosecutor failed to disclose this information to the jury and
    where there is no indication that these past rewards would
    have motivated any of the witnesses to give false testimony.

13. TRIAL—BURDEN OF PROOF—SHIFTING BURDEN.
    A prosecutor did not impermissibly shift the burden of proof onto
    the defendant by referring, in his closing argument, to the
    defendant's failure to question some of the witnesses who were
    present at trial about some of the factual issues of the case

where the statement was not directed at defendant's refusal to testify but rather to facts that could have been within the knowledge of persons other than the defendant, and where the jury was properly instructed on the burden of proof by the trial judge.

14. Witnesses—Criminal Law—Defendant's Credibility—Impeachment—Defendant's Use of an Alias—Credibility.

A defendant's credibility can be impeached by introducing evidence of his use of aliases where the introduction of the defendant's use of aliases into evidence is not highly inflammatory or prejudicial to the defendant; a witness's use of an alias is highly probative of the witness's credibility.

15. Homicide—Felony-Murder—Malice Aforethought.

Felony-murder does not require that the defendant have an actual intention to kill the victim; malice aforethought is all that is required.

16. Homicide—First-Degree Murder—Felony-Murder—Instructions to Jury—Manslaughter—Resentencing—New Trials —Malice—Appeal and Error.

A defendant's conviction of first-degree murder under a felony-murder theory should be reversed, and the matter remanded for entry of a judgment of conviction of the lesser included offense of manslaughter and for resentencing, or, upon motion of the prosecutor, a new trial for felony-murder, where the trial judge, in his instructions to the jury, erroneously removed the essential element of malice from the jury's consideration.

17. Trial—Prejudice—Disclosure—Numerical Division of Jurors —Harmless Error—Homicide—Felony-Murder.

The disclosure of the numerical division among the jurors to a trial court may create the possibility of prejudice; however, such a disclosure was harmless error, in a trial for felony-murder, where the trial judge had his court clerk inquire of the jury whether they thought that they might agree on a verdict before the day was over and the jury foreman voluntarily told the clerk the numerical division but not which way the majority and minority were leaning, where the clerk did not interject extraneous or prejudicial matter into his conversation, and where there is no reasonable possibility that the disclosure of this information to the clerk aided in convincing even one undecided juror of defendant's guilt beyond a reasonable doubt.

CONCURRENCE IN PART, DISSENT IN PART BY V. J. BRENNAN, J.

18. TRIAL—JURY INSTRUCTIONS—REQUEST FOR INSTRUCTION—PRECE-
    DENT—RETROACTIVE APPLICATION.

    *The Supreme Court has held that an instruction on a necessarily
    lesser included offense must be given upon request; however,
    the Supreme Court precedent to this effect has retroactive
    application only to those cases which were in the process of
    appeal on the date of the Supreme Court's holding.*

19. CRIMINAL LAW—JURY INSTRUCTIONS—HOMICIDE—FELONY-MURDER
    —APPEAL AND ERROR—MALICE—ROBBERY—ENUMERATED FELO-
    NIES.

    *A trial judge's instructions to the jury, in a trial for first-degree
    felony-murder, were not erroneous and did not eliminate the
    element of malice from the jury's consideration where he
    instructed that if the killing was found to have occurred during
    a robbery the defendant could be found guilty of felony-murder;
    the element of malice sufficient to elevate the killing to felony-
    murder is established by a finding that the killing occurred in
    the perpetration of one of the enumerated felonies.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *David H. Sawyer,*
Prosecuting Attorney, and *Carol S. Irons,* Assist-
ant Prosecuting Attorney, for the people.

*Loeks, Buth, Wood & Weidaw,* for defendants.

Before: DANHOF, C.J., and V. J. BRENNAN and
R. H. CAMPBELL,* JJ.

DANHOF, C.J. These two felony-murder cases
arose out of an armed robbery. On October 18,
1972, defendants allegedly robbed a pharmacy and
during the perpetration of that robbery shot and
killed the pharmacist, Dr. Werra. On October 4,
1973, after a jury trial, defendant Dietrich was
found guilty of first-degree murder, MCL 750.316;
MSA 28.548. Defendant Cole's trial was not held
until November 18, 1974, because of difficulties in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

locating him and securing his presence at trial. He was also found guilty by a jury of first-degree murder. Both defendants were sentenced to life imprisonment and appeal as of right. The evidence introduced at each of the defendants' trials, if believed by the jury, clearly established each defendant's guilt beyond a reasonable doubt. The evidence indicated that on the night in question, the defendants were riding around in an automobile with two other friends when they asked to be let out. After letting the defendants out of the car, the friends drove around the block. At approximately 8:40 p.m., two persons entered the Butterworth Pharmacy. The only other people in the store at that time were the pharmacist and a stock boy, Thomas Howland, who was stocking shelves. Howland heard the front door open and someone talking to the pharmacist. He heard two loud noises which he presumed were firecrackers, so he stopped stocking the shelves and went to see what had happened. He then saw one man run past him out the door and another man, wearing a ski mask, standing near the cash register. The man with the mask told Howland to stay where he was because they had a gun. He then took some money from the cash register and ran out the door. Defendants returned to the car and Cole said, "Get out of here. I shot someone". The four people then returned to an address on Wavell where they had been staying with Susan Ellis.

Early the next morning, defendants had a conversation with Ms. Ellis in which defendant Cole explicitly admitted his participation in the robbery and defendant Dietrich implicated himself in the robbery by correcting some of Cole's misstatements concerning the events that took place during the robbery. Later that day, these individuals left in an automobile for Kentucky. On the way, Dietrich,

who was riding in the back seat, tossed an article of clothing to Cole, who was in the front seat. It was of black and blue woolen material. Dietrich said he could not be identified since he was wearing a ski mask. Cole then threw the article out of the car.

These cases were consolidated on appeal because they raised one common issue and were both remanded back to the trial court for an evidentiary hearing on this issue. However, except for this one common issue, these cases raise different issues. For this reason and because defendants were tried separately, this opinion will discuss the issues raised by each defendant separately.

## THE DIETRICH TRIAL

After trial, defendant's attorney learned that some of the prosecution's witnesses received monetary rewards from various organizations, such as Silent Observer and the Kent County Pharmaceutical Association (KCPA), in connection with this case. Defendant contends that the prosecutor knew or should have known of these rewards or at least of the possibility of them, because of the cooperation between the prosecutor, the police, and these organizations. The prosecutor did not disclose any information relating to these rewards either to the defendant before trial or to the jury at trial. Defendant claims that the failure to disclose this material information pertaining to the credibility of these witnesses requires reversal, see *United States v Agurs,* 427 US 97; 96 S Ct 2392; 49 L Ed 2d 342 (1976), *Giglio v United States,* 405 US 150; 92 S Ct 763; 31 L Ed 2d 104 (1972), *People v Atkins,* 397 Mich 163; 243 NW2d 292 (1976), *People v Mata (On Remand),* 80 Mich App 204; 263

NW2d 332 (1977), *People v Nettles,* 41 Mich App 215; 199 NW2d 845 (1972).

As mentioned before, on appeal this case was remanded for an evidentiary hearing on this issue. At that hearing, a witness connected with the Silent Observer Program testified that he did not contact any of the witnesses in defendant's trial either before or during trial. He testified that a reward was paid to Roger Mollema but that he was not contacted about it until November 16, 1973. Another witness testified that she received an award from a veteran's club in which the victim was a member but that she was not contacted about this until after trial. Also, she testified that prior to trial she had no expectation of receiving a reward. A police detective testified that he was aware that rewards were paid by the KCPA on March 6, 1974, but that he did not become aware of these rewards until after trial. A newspaper article, dated October 20, 1972, was introduced into evidence and it stated that a $500 reward was being offered by the KCPA for information leading to the arrest of the defendants. After the hearing, the trial judge denied defendant's motion for a new trial since he found that none of the witnesses were offered rewards until after trial. This finding will not be set aside unless it is clearly erroneous, GCR 1963, 517.1.

Defendant's argument is premised on the basis that the prosecutor has the duty to protect the interests of all citizens and to seek justice, not just convictions, *Hurd v People,* 25 Mich 405 (1872), *People v Nettles, supra.* The prosecutor is obligated to present the trier of fact not only with incriminating evidence against the defendant but also with any material evidence exculpating the defendant. This duty to disclose also extends to

material impeaching information, *Napue v Illinois,*
360 US 264; 79 S Ct 1173; 3 L Ed 2d 1217 (1959).

The general standard for materiality in this
context is set out in *United States v Agurs, supra,*
at 112–113.

"The proper standard of materiality must reflect our
overriding concern with the justice of the finding of
guilt. Such a finding is permissible only if supported by
evidence establishing guilt beyond a reasonable doubt.
It necessarily follows that if the omitted evidence cre-
ates a reasonable doubt that did not otherwise exist,
constitutional error has been committed. This means
that the omission must be evaluated in the context of
the entire record. If there is no reasonable doubt about
guilt whether or not the additional evidence is consid-
ered, there is no justification for a new trial. On the
other hand, if the verdict is already of questionable
validity, additional evidence of relatively minor impor-
tance might be sufficient to create a reasonable doubt."
(Footnotes omitted.)

Almost all the impeaching evidence cases cited by
defendant involve a promise or expectation of
leniency for an accomplice and/or addict informer,
see *People v Atkins, supra, People v Mata, supra,*
*People v Nettles, supra.* Defendant argues that the
only difference between these addict/accomplice-
informer cases and this monetary reward case is
the degree and kind of benefit conferred upon the
witness in exchange for the testimony. Defendant
claims that this difference does not justify the
prosecutor's failure to disclose and that this infor-
mation should have been presented to the trier of
fact to be considered together with all the other
evidence.

Although defendant's arguments are not unrea-
sonable, there are other factual differences in this
case which distinguish it from cases in which

testimony was given in exchange for a promise of leniency. One important distinction in this case is that there was no evidence that any of the witnesses were promised rewards, expected to receive a reward or even knew of the possibility of a reward before they testified at defendant's trial. As the Supreme Court stated in *People v Atkins, supra,* at 174, "The focus of required disclosure is not on factors which may motivate a prosecutor in dealing subsequently with a witness, but rather on facts which may motivate the witness in giving certain testimony".

The possibility of receiving a monetary reward would influence and motivate a witness to give false testimony only if the witness was aware of the possibility of a reward. In this case, there is no evidence that any of the witnesses were aware, before trial, of the possibility of a reward. Furthermore, this is not a case in which it would be atypical for a witness to not have an expectation of consideration for his cooperation, *cf. People v Atkins, supra.* These witnesses are not addict informers, accomplices or co-conspirators. In *United States v Washington,* 550 F2d 320 (CA 5, 1977), the Court even questioned whether this type of monetary reward offer was the type of "exculpatory evidence" contemplated by *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

After a review of the record, we conclude that the trial judge's findings that the witnesses were not aware of the reward until after trial and did not testify with an expectation of consideration were not clearly erroneous. Since none of the witnesses knew of these rewards before testifying, the prosecutor was not under a duty to disclose this information concerning these future possibilities, see *People v Atkins, supra,* at 174. Further-

more, considering all the evidence in this case, we
conclude that the omitted information, if intro-
duced, would not have raised a reasonable doubt
about the defendant's guilt that did not otherwise
exist, see *United States v Agurs, supra,* at 112,
*Washington, supra, United States v Masri,* 547
F2d 932 (CA 5, 1977). Therefore, any possible error
was harmless.

The second issue raised by defendant concerns
the admission into evidence of testimony by Ms.
Ellis about a conversation which took place be-
tween Dietrich, Cole and herself on the morning
after the robbery. Ms. Ellis testified that Dietrich
and Cole came into her room around 9:30 a.m. and
she also testified as follows:

"Q. What were you referring to?

"A. I was referring to the shooting the night before.

"Q. What, if anything, was said after you said that?

"A. Terry Cole said he was the one that shot the
man.

"Q. Terry said he shot the man?

"A. Yes. He said, 'I shot the man.'

"Q. All right, please continue.

"A. And I asked him, 'Why?' Terry said they were
just robbing him. And then he went into detail about
how he went into the store and went behind the coun-
ter and the man was sitting on a chair behind the
counter, or a wall—I don't remember exactly what he
said, but he said the man was sitting behind a counter,
I believe, and he went in and the man came after him.
He said that he turned around, shot the gun, and then
he turned to run. And he couldn't remember whether
the gun went off or not. So he turned around, looked
again when he got to the door, and the man was right
there, so he shot it again. And I believe he said that he
had only shot it once, and that is when Skippy said,
'No, you shot him twice.' "

At trial, defendant objected to the admission of this testimony into evidence on the basis that the references to Cole's statements were inadmissible hearsay. The prosecutor argues that these statements are admissible in Dietrich's trial as an adoptive admission, see *People v Greeson,* 230 Mich 124; 203 NW 141 (1925), see also MRE 801(d)(2). Defendant contends that even if these statements are considered adoptive admissions, they are inadmissible since they were adopted by defendant's silence, see *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), *People v Bigge,* 288 Mich 417; 285 NW 5 (1939), *People v Parks,* 57 Mich App 738; 226 NW2d 710 (1975).

If defendant had been silent when Cole made these statements, then this evidence would not be admissible as an adoptive admission, see *Bobo, supra, Bigge, supra.* However, the defendant was not silent, but rather, he corrected those statements made by Cole which he thought were incorrect. The circumstances surrounding this conversation and the defendant's statements in response to Cole's statements distinguish this case from the holding and rule announced in *Bobo, supra.*[1]

Even though the introduction of this testimony does not infringe on defendant's right to remain

[1] Another factor which distinguishes this case from *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), is the fact that defendant was not under arrest or even the "focus" of any police investigation when this conversation took place. No police officers were present when the conversation took place. The conversation occurred within 12 hours of the robbery, involved only the defendant, his alleged accomplice, and another acquaintance. The conversation ultimately resulted in a decision that they would all leave the state later that day. Considering all these circumstances and Dietrich's statement, it seems very unlikely that his initial silence was an attempt to exercise his right to remain silent. Rather, it seems more likely, as the trial judge found, that Dietrich did not respond initially to Cole's statements because Cole was still talking. For these reasons, and because Dietrich corrected Cole's misstatement, we conclude that the rule announced in *People v Bobo, supra,* does not apply to this testimony.

silent, the use of adoptive admissions in criminal cases is still not favored, see *People v Lowe,* 71 Mich App 340; 248 NW2d 263 (1976), *People v Parks, supra,* see also *People v Kelley,* 32 Mich App 126; 188 NW2d 654 (1971). However, adoptive admissions are admissible when it clearly appears that the defendant understood and unambiguously assented to the statement made, *People v Lowe, supra, Naples v United States,* 120 US App DC 123; 344 F2d 508 (1964). From the circumstances surrounding this conversation, it clearly appears that defendant adopted and assented to Cole's statement. Defendant's response shows that he heard Cole's statement and had the ability to respond to it. Furthermore, the statement demonstrates that Dietrich was motivated to deny or correct those portions of Cole's statement which he thought were untrue. Also, the fact that these statements were made to a mutual acquaintance and that the conversation resulted in a decision that they would all leave the state supports the conclusion that the defendant adopted and/or acquiesced in Cole's statement. Therefore, in view of the circumstances surrounding this conversation and the indicia of reliability they provide, we do not think the trial judge erred in admitting this testimony into evidence.

The third issue raised by defendant concerns the prosecutor's attempt to introduce into evidence a statement made by defendant in which he admitted his involvement in another robbery. Evidence which shows or tends to show that the accused has committed another offense wholly independent of and unconnected with that offense for which he is on trial is generally irrelevant and inadmissible, *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972). The prosecutor argues that this evidence

was admissible under MCL 768.27; MSA 28.1050, to prove defendant's scheme or plan. The defendant objected to the introduction of this evidence at trial and the trial judge properly sustained his objection. The defendant did not request a special curative instruction or make a motion for a mistrial. On appeal, defendant claims that the prosecutor's interjection of this testimony into the proceeding requires reversal because the prosecutor should have anticipated this testimony in response to his questioning.

Although the prosecutor should have anticipated this testimony in response to this question, we do not think the error in this case was so offensive to the maintenance of a sound judicial process that it can never be regarded as harmless, see *People v Adan,* 83 Mich App 326; 268 NW2d 397 (1978), *People v Wilkins,* 82 Mich App 260; 266 NW2d 781(1978), *People v Swan,* 56 Mich App 22; 223 NW2d 346 (1974), since the trial judge excluded this testimony from evidence, see *People v Willie Lee Lewis,* 31 Mich App 433; 188 NW2d 107 (1971), *People v Farley,* 13 Mich App 132; 163 NW2d 692 (1968), and the prosecutor did not attempt to continue this line of questioning or mention this testimony in his closing argument. Furthermore, considering the other evidence against defendant, any error in this case was harmless beyond a reasonable doubt, see *Swan, supra.* This testimony was excluded from evidence by the trial judge. Also, although no curative instruction was requested or given, the jury was instructed to consider only the evidence produced in court.

Defendant also raises two issues which relate to the prosecutor's use of defendant's prior convictions to impeach his credibility. At the beginning of the trial, defendant made a motion to exclude

his prior convictions from being admitted into evidence. In making this motion, defendant's attorney stated that the defendant had a prior felony conviction for breaking and entering and a misdemeanor conviction for loitering. The trial judge, in the exercise of his discretion, denied defendant's motion. On appeal, defendant contends that the trial judge erred reversibly in denying his motion because the trial judge did not have sufficient information concerning defendant's criminal record to effectively exercise his discretion, see *People v Farrar*, 36 Mich App 294; 193 NW2d 363 (1971). Even though the record does not show the date of defendant's convictions, the record demonstrates that the trial judge was aware of the nature and number of convictions. Defendant does not claim on appeal that the convictions were so old that their probative value was lost. In conclusion, a review of the record does not support defendant's claims but rather indicates that the judge had sufficient information to properly exercise his discretion.

In a related issue, defendant claims that reversible error occurred when the prosecutor cross-examined the defendant about his arrest for drunk and disorderly conduct. Defendant on direct examination admitted that he had been convicted of breaking and entering. On cross-examination, the prosecutor asked defendant, "You mentioned arrest and conviction in Florida. Were you ever arrested and convicted for anything else?" Defendant answered, "I was arrested in Kentucky for some drunk and disorderly conduct". Defendant did not object, at trial, to the admission of this evidence. On appeal, defendant argues that the admission of this testimony requires reversal because the offense was only a misdemeanor which

did not involve *crimen falsi* and because the testimony referred to an arrest, not a conviction.

In *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), the Supreme Court held that it was reversible error to impeach a defendant with misdemeanor and municipal ordinance convictions, but that case was not decided until after the trial in this case. *Renno, supra,* does not apply retroactively to this case because Dietrich had already acknowledged his prior felony conviction on direct examination and because he did not fully preserve this issue by objecting at trial, *People v Sanders,* 394 Mich 439; 231 NW2d 639 (1975).

Defendant also claims that it was reversible error to admit this evidence of defendant's arrest without proof of a conviction, see *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973), *People v Rappuhn,* 390 Mich 266; 212 NW2d 205 (1973). However, if there was any error in this case, it does not require reversal. First, it should be noted that defendant's answer was not responsive to the prosecutor's question. The prosecutor asked defendant if he had ever been arrested and convicted of anything else but defendant responded that he was arrested for drunk and disorderly conduct. This unresponsive answer to a proper question does not justify reversal, see *People v Tutha,* 276 Mich 387; 267 NW 867 (1936), *People v Petrov,* 75 Mich App 532; 255 NW2d 673 (1977). Also, there is no indication that the prosecutor was deliberately attempting to interject inadmissible evidence into the trial. Defense counsel, at the beginning of trial, mentioned that defendant had two prior convictions. Defendant, on direct examination, acknowledged his conviction for breaking and entering. Since he did not mention the misdemeanor conviction, it seems very likely that the prosecu-

tor's question was intended to elicit testimony about this other conviction. Furthermore, defendant did not object at trial to the admission of this testimony. Considering the other evidence against defendant, there is no reasonable possibility that the admission of this testimony into evidence resulted in a miscarriage of justice, MCL 769.26; MSA 28.1096.

Defendant also assigns as error the trial judge's failure, upon request, to instruct the jury on the lesser included offense of second-degree murder. The trial judge denied defendant's request because he did not think there was sufficient evidence to support a conviction of second-degree murder, see *People v Carter,* 387 Mich 397; 197 NW2d 57 (1972). At the time of trial, *People v Carter, supra,* was the controlling Supreme Court case on this issue but since trial, the Supreme Court has decided a number of significant cases concerning this issue, see *People v Crawl,* 401 Mich 1; 257 NW2d 86 (1977), *People v Jenkins,* 395 Mich 440; 236 NW2d 503 (1975), *People v Carter,* 395 Mich 434; 236 NW2d 500 (1975), *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975). In *People v Carter,* 395 Mich 434; 236 NW2d 500 (1975), the Supreme Court held that second-degree murder is a necessarily lesser included offense of felony-murder. In *Ora Jones, supra,* the Supreme Court held that an instruction on a necessarily lesser included offense must be given upon request. *People v Lovett,* 396 Mich 101; 238 NW2d 44(1976), and *People v Allen,* 80 Mich App 786; 265 NW2d 47(1978), apply *Ora Jones, supra,* retroactively. In *People v Crawl, supra,* the Supreme Court held that it was error to fail to give an instruction on second-degree murder in a felony-murder case when the defendant had requested one. The con-

trolling opinion in *Crawl, supra,* does not expressly
resolve the issue of whether *People v Carter,* 395
Mich 434; 236 NW2d 500 (1975), is to be retroac-
tively applied. *Crawl, supra,* was one of the cases
held in abeyance while *People v Carter* was de-
cided, see, *People v Crawl,* 401 Mich at 7. Since
this issue was preserved by a proper and timely
request for an instruction on second-degree mur-
der and since this judgment of conviction is pend-
ing on an appeal as of right, we conclude that the
holding in *People v Crawl, supra,* should be ex-
tended to apply in this case. However, retrial is
not required. Instead, we remand for entry of a
judgment of conviction of the lesser included of-
fense of second-degree murder and for resentenc-
ing, see *People v Herbert Ross,* 73 Mich App 588,
594; 252 NW2d 526 (1977), provided, however, that
if the prosecuting attorney, in his discretion, deter-
mines that justice would be better served by re-
trial on the felony-murder charge, the trial court
shall, upon notification by the prosecutor prior to
resentencing, vacate the judgment of conviction of
second-degree murder and grant a new trial on the
felony-murder charge, *People v Archie Smith,* 396
Mich 825; 238 NW2d 536 (1976).

## THE COLE TRIAL

Defendant Cole also contends that it was reversi-
ble error for the prosecutor to fail to disclose the
fact that certain witnesses at his trial had been
paid monetary rewards. Cole's trial did not take
place until November, 1974. By this time, defend-
ant Dietrich had already been convicted by a jury
and the witnesses who testified at Dietrich's trial
had already received their monetary rewards. By
the time of Cole's trial, the prosecutor was aware
that the witnesses knew that rewards had been

offered and paid and this fact distinguishes this case from Dietrich's. However, considering the other circumstances surrounding this case, we conclude that the prosecutor did not commit reversible error by not disclosing to the jury the information about these rewards.

The primary reason why reversal is not required is that there was no evidence that any of these witnesses had any expectation of another or further rewards for their testimony in this case. The rewards that had been offered were all paid out after Dietrich's trial. Presumably, the rewards were offered and paid for either the information that led to these defendants' arrests or for the testimony given at Dietrich's trial. Since all the allotted reward money had been paid out, it seems unlikely that the witnesses expected further rewards for their testimony in Cole's trial. Again, this is not a case in which it would be atypical for a witness not to expect consideration in exchange for his testimony, compare, *Atkins, supra.* There was no evidence that any of the earlier rewards were revocable or that the witnesses feared losing their reward money if they changed their testimony at Cole's trial. In conclusion, in the absence of any evidence to the contrary, we do not think the fact that a monetary reward was offered and paid to some witnesses at an earlier trial of one accomplice would motivate that same witness, or another witness, to give false testimony at the trial of another accomplice. Since there is no indication that these past rewards would motivate any of the witnesses to give false testimony, the prosecutor did not err reversibly by failing to disclose this information to the jury.

Defendant also raises two issues relating to the prosecutor's cross-examination of the defendant

and the prosecutor's closing argument. Defendant claims that it was reversible error for the prosecutor, in his closing argument, to refer to defendant's failure to question some of the witnesses who were present at trial about some of the factual issues in this case. Defendant claims that this argument impermissibly shifts the burden of proof onto the defendant. The substantive message in the prosecutor's closing argument was that the people's case was overwhelming and that there was a lack of evidence in favor of the defendant. The statement was not directed at defendant's refusal to testify but rather to facts that could have been within the knowledge of persons other than the defendant, see *People v White,* 401 Mich 482; 257 NW2d 912 (1977), *People v Williams,* 83 Mich App 642; 269 NW2d 251 (1978), *People v Rodriguez,* 83 Mich App 606; 269 NW2d 199 (1978). The prosecutor's argument did not impermissibly shift the burden of proof onto the defendant. The jury was properly instructed on the burden of proof by the trial judge.

Another related issue raised by defendant concerns the prosecutor's questioning of defendant about his use of aliases. On cross-examination, the defendant admitted using aliases both before and after the robbery. Although the issue of whether a defendant's credibility can be impeached by introducing evidence of his use of aliases is an issue of first impression in Michigan, other jurisdictions have allowed the admission of this evidence for impeachment purposes, see, *Bland v State,* 42 Ala App 392; 166 So 2d 728 (1964), *Fletcher v State,* 40 Ariz 388; 12 P2d 284 (1932), *Feldman v State,* 194 So 2d 48 (Fla App, 1967), *State v Waldron,* 128 La 559; 54 So 1009 (1911), *Commonwealth v Giambrone,* 183 Pa Super 283; 130 A2d 254 (1957), *State*

*v Sysinger,* 25 SD 110; 125 NW 879 (1910), but see
*People v Fleming,* 166 Cal 357; 136 P 291 (1913).

We think that the witness's use of an alias is
highly probative of the witness's credibility. In this
case, the introduction into evidence of defendant's
use of aliases was not highly inflammatory or
prejudicial to the defendant, compare *People v
Fleming, supra.* The trial judge did not err in
allowing this testimony into evidence for impeach-
ment purposes. The other allegations of prosecuto-
rial misconduct raised by defendant do not require
extended discussion or reversal. No objection was
made at trial and no curative instructions were
requested. Although we do not condone the prose-
cutor's actions, see *People v Whalen,* 390 Mich
672; 213 NW2d 116 (1973), no miscarriage of jus-
tice resulted from his questions or argument and
reversal is not required, see *People v Walton,* 76
Mich App 1; 255 NW2d 640 (1977), *People v Rich-
ard Smith,* 68 Mich App 138; 242 NW2d 42 (1976).

Defendant also claims that the trial judge's in-
structions to the jury were erroneous. Defendant
requested an instruction which would have re-
quired the jury to find that he had an actual
intention of killing the pharmacist in order to
convict him of first-degree felony-murder. The trial
judge properly denied defendant's request. Felony-
murder does not require that the defendant have
an actual intention to kill the victim. Malice afore-
thought is all that is required, see *People v Haack,*
396 Mich 367; 240 NW2d 704 (1976), *People v
Morrin,* 31 Mich App 301; 187 NW2d 434 (1971),
see also CJI 16:2:02.

Defendant also claims that the trial judge erred
by instructing the jury to find defendant guilty of
felony murder if the killing of the pharmacist
occurred during the commission of the robbery.

Defendant argues that this instruction took the issue of malice aforethought from the jury, see *People v Fountain,* 71 Mich App 491; 248 NW2d 589 (1976). Although the judge in his instructions did refer to the necessity of finding a murder, we think that the instruction when read as a whole took the essential issue of malice aforethought away from the jury. We recognize that there is a difference of opinion in this Court on this issue, compare *People v Wilson,* 84 Mich App 636; 270 NW2d 473 (1978), *People v Hansma,* 84 Mich App 138; 269 NW2d 504 (1978), *People v Robert G Thompson,* 81 Mich App 348; 265 NW2d 632 (1978), *lv gtd,* 402 Mich 938 (1978), *People v Wright,* 80 Mich App 172; 262 NW2d 917 (1977), *lv gtd,* 402 Mich 938 (1978), *People v Fountain, supra,* with *People v Wilder,* 82 Mich App 358; 266 NW2d 847 (1978), *People v Till,* 80 Mich App 16; 263 NW2d 586 (1977). The opinions in those cases clearly set out the issue to be resolved and the different approaches used in analyzing the issue. It is sufficient in this case to note that we agree with the reasoning and conclusion reached in *Fountain, supra.* Accordingly, we reverse defendant's felony-murder conviction. However, retrial on that charge is not required. Instead, we remand for entry of a judgment of conviction of the lesser included offense of manslaughter and for resentencing, provided, however, that if the prosecuting attorney, in his discretion, determines that justice would be better served by retrial on the felony-murder charge, the trial court shall, upon notification by the prosecutor prior to resentencing, vacate the judgment of conviction of manslaughter and grant a new trial on the felony-murder charge, *People v Archie Smith,* 396 Mich 825; 238 NW2d 536 (1976). In view of the resolution of this issue, it is not necessary to consider the other

instructional issues raised by defendant, see *People v Hansma, supra.*

Finally, defendant argues that reversal is required because the court clerk communicated with the jury during their deliberations and inquired into whether they were anywhere near reaching a verdict. At approximately 4:30 p.m., the trial judge asked the clerk to check on the jury's status for the purpose of determining whether to prepare additional arrangements in the event that deliberations carried over to the next day. The court's clerk did not ask for the numerical division among the jurors, but the foreman of the jury voluntarily told him this anyway. The jury resumed their deliberations and after approximately 1/2 hour, they returned a verdict of guilty.

In this case, it was not error for the trial judge to have the clerk inquire into whether the jury thought they might agree on a verdict before the day was over. The trial judge did not ask the jury himself. He sent the clerk. The jury had been deliberating since early morning and the hour was growing late. The trial judge expressed his concern over the status of two of the jurors who were pregnant. This minor intrusion into the privacy of the jury's deliberation is justified to permit the trial judge to make any required arrangements and to properly supervise his docket, see *People v Luther,* 53 Mich App 648; 219 NW2d 812 (1974). Also, there is no evidence that the clerk interjected any extraneous or prejudicial matter into his conversation with the jury foreman. The clerk did not state any opinion, give any instructions or refer to any of the evidence. He merely asked the foreman whether the jury thought they would be able to reach a verdict before the day was over.

The courts in Michigan have recognized that

prejudice may result from the disclosure of the numerical division among the jurors, see *People v Wilson,* 390 Mich 689; 213 NW2d 193 (1973). In *Wilson, supra,* the Supreme Court held that it was reversible error for the court to inquire into the numerical division among the jurors. However, the facts in this case are distinguishable from *Wilson, supra,* since the court did not request this information but the foreman volunteered it anyway. Another factor which tends to lessen the possibility of prejudice in this case is that the foreman did not indicate which way the majority and minority were leaning. Although the trial judge did not follow the procedure recommended in *People v Luther,* 53 Mich App 648; 219 NW2d 812 (1974), by advising the jury to only tell him whether the majority of the jurors thought they could reach a verdict or that the majority thought they would not reach a verdict, we do not think reversal is required in this case. While the disclosure of the division among the jurors may create the possibility of prejudice, we think that, in this case, there is no reasonable possibility that the disclosure of this information to the court clerk aided in convincing even one undecided juror of defendant's guilt beyond a reasonable doubt. Accordingly, we conclude that any error in having the court clerk check on the status of the jury was harmless.

These cases are reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

R. H. CAMPBELL, J., concurred.

V. J. BRENNAN, J. *(concurring in part; dissenting in part).* I concur separately as to Dietrich but respectfully dissent as to Cole.

DIETRICH

I agree that *Ora Jones* should be applied retroactively to reduce the defendant's conviction to second-degree murder. However, I would specifically point out that the retroactive application of *Ora Jones* is limited to cases like this one which were in the process of appeal on the date of the *Ora Jones* opinion. See my dissenting opinion in *People v Thurmond,* 75 Mich App 310; 254 NW2d 879 (1977).

COLE

The trial court instructed that if the killing was found to have occurred during the robbery then the defendant could be found guilty of felony-murder. The majority holds that this instruction eliminated the element of malice from the jury's consideration. The element of malice sufficient to elevate the killing to felony-murder is established by finding that the killing occurred in the perpetration of one of the enumerated felonies. *People v Till,* 80 Mich App 16, 28-29; 263 NW2d 586 (1977). I would hold the instruction not to be erroneous.

Since defendant Cole also properly raised the lesser included offense issue under *Ora Jones,* I would reduce the conviction to second-degree murder as was done with defendant Dietrich.