PEOPLE v AUSTIN

Docket No. 78-3119. Submitted December 4, 1979, at Grand Rapids.—
    Decided March 4, 1980.

   Sam Austin was convicted of delivery of heroin and conspiracy to
     deliver heroin and pled guilty to a second felony offender
     charge, Kent Circuit Court, Stuart Hoffius, J. Defendant ap-
     peals. On appeal, defendant alleges that the trial court commit-
     ted reversible error in admitting defendant's prior acts of
     selling and purchasing heroin under the similar acts statute
     and that reversible error was committed when the trial court
     ruled that defendant's prior conviction for attempted delivery
     of heroin could be used for impeachment. *Held:*

     1. Evidence of alleged prior heroin transactions by a defen-
     dant several months previous to the sale for which he is on
     trial is generally inadmissible because probative value is out-
     weighed by prejudice. The mere fact that two sales of heroin
     were close in time does not, by itself, make the prior sale
     admissible to show a scheme or plan under the similar acts
     statute. Defendant denied any participation in the alleged sale.
     Evidence of prior bad acts is inadmissible under the similar
     acts statute to put a defendant's intent or lack of intent in
     doing an act in issue where there is a denial of any participa-
     tion in the charged crime. Where there is no evidence of a
     scheme *other than a similar heroin sale, evidence of bad acts*
     tending to prove a scheme is inadmissible for this purpose also.
     Defendant's alleged bad acts were neither contemporaneous
     with the charged conspiracy nor were they integrally related or
     blended into the offense for which defendant was on trial. The
     admission of this evidence was reversible error because it is
     reasonably possible that in any proceeding free of this error
     one juror might have voted to acquit.

     2. A trial court commits error when it considers the similar-
     ity of a prior conviction as an element in favor of admissibility.
     Defendant's conviction for attempted delivery of heroin to one

REFERENCES FOR POINTS IN HEADNOTES
[1, 5] 29 Am Jur 2d, Evidence § 320 *et seq.*
[2, 3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 46, 47.

of the witnesses could not be used for purposes of impeachment. The trial court committed reversible error when it held that evidence of the prior conviction was admissible.

3. A police officer who testified in the people's case in chief was allowed to repeat a portion of his previous testimony on rebuttal. This may be only harmless error but it should be avoided on retrial.

4. The trial court erred in denying defendant's request to endorse and produce a certain witness. She was a res gestae witness and on remand should be endorsed and produced at trial.

5. The issue of whether the prosecutor was excused from endorsing or producing the other persons at the residence where the alleged delivery was made was erroneously submitted to the jury. This is a question of law for the court, not the jury. Furthermore, the other persons present during the alleged delivery of heroin were res gestae witnesses. They do not fit into the accomplice exception which excuses endorsement and production. Therefore, if they are not produced at the new trial the trial court must conduct a hearing to determine whether the prosecutor has exercised due diligence in attempting to produce them.

Reversed and remanded.

1. CRIMINAL LAW — EVIDENCE — PRIOR BAD ACTS — JURY — PREJUDICIAL EFFECT.

Evidence of a criminal defendant's prior bad acts is generally inadmissible because its probative value is outweighed by the likelihood that it will prejudice the jury against the defendant.

2. CRIMINAL LAW — DRUGS AND NARCOTICS — HEROIN — EVIDENCE — SCHEME OR PLAN — STATUTES.

The mere fact that two sales of heroin were close in time does not, by itself, make the prior sale admissible to show a scheme or plan under the similar acts statute (MCL 768.27; MSA 28.1050).

3. CRIMINAL LAW — DRUGS AND NARCOTICS — HEROIN — EVIDENCE — INTENT — PRIOR BAD ACTS — STATUTES.

A defendant's general denial of any participation in the sale or delivery of heroin does not suffice to put his intent or lack of intent in doing an act sufficiently in issue to permit evidence of prior bad acts to be introduced under the similar acts statute (MCL 768.27; MSA 28.1050).

4. CRIMINAL LAW — EVIDENCE — PRIOR BAD ACTS — JURY — REVERSIBLE ERROR.

The erroneous admission of evidence of similar bad acts is reversible error where it is reasonably possible that in a trial free of the error even one juror might have voted to acquit the defendant.

5. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — ADMISSIBILITY — REVERSIBLE ERROR.

A trial court commits error when it considers the similarity of a prior conviction as an element in favor of admissibility of evidence of that conviction.

6. WITNESSES — CRIMINAL LAW — RES GESTAE WITNESSES — EYEWITNESSES — EVIDENCE — ENDORSEMENT OF WITNESSES.

A res gestae witness is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged offense; every reasonable doubt as to whether a witness is a res gestae witness should be resolved in favor of endorsing and calling the witness.

7. WITNESSES — CRIMINAL LAW — ENDORSEMENT AND PRODUCTION — QUESTION OF LAW — SUBMISSION TO JURY.

The issue of whether a prosecutor is excused from endorsing or producing witnesses is a question of law for trial court determination; submission of this question to a jury is error.

8. WITNESSES — CRIMINAL LAW — RES GESTAE WITNESSES — DUTY TO PRODUCE — ACCOMPLICES.

A prosecutor's duty to endorse and produce res gestae witnesses does not include the production of accomplices to the crime; however this exception to his duty to produce encompasses only such persons who participated in or were involved in the crime charged.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Carol S. Irons,* Assistant Prosecuting Attorney, for the people.

*Pinsky & Soet,* for defendant on appeal.

Before: BRONSON, P.J., and ALLEN and R. M. MAHER, JJ.

R. M. MAHER, J. On March 2, 1978, defendant was convicted by a jury of delivery of heroin and conspiracy to deliver heroin, contrary to MCL 335.341(1)(a); MSA 18.1070(41)(1)(a), repealed by 1978 PA 368, effective September 30, 1978, now MCL 333.7401; MSA 14.15(7401), MCL 750.157a; MSA 28.354(1), respectively. On June 27, 1978, defendant pled guilty to a second felony offender charge, contrary to MCL 769.10; MSA 28.1082; MCL 769.13; MSA 28.1085. After a previous sentence was vacated, he was resentenced on July 11, 1978, to serve a prison term of 10 to 30 years. Defendant appeals as of right and we reverse.

At trial, Doug King testified that he had been working as an informant for the Grand Rapids Police Department since January, 1977. He agreed to assist the police in making "controlled buys" which meant that, after being appropriately searched by police, he was given money to purchase drugs, was observed as far as possible by police in making drug purchases, and was searched subsequent to each purchase. He testified that sometimes while making a "controlled buy" it was necessary to use heroin because the seller did not want the purchaser to leave the premises with unused drugs. King made 63 "controlled buys" and in approximately one-third of these situations he had to use the heroin.

King testified that on August 26, 1977, at approximately 8:30 a.m. he went to 546 Dolbee Street, S.E., Grand Rapids, to see one Sharon McCoy. At that time he saw defendant, whom he had known for approximately three or four years. King asked defendant if he had any drugs. Defendant replied that he could obtain three bags for him at $50 each.

After that King telephoned Officer Hoatlin of

the Grand Rapids Police Department and arranged
to meet him to set up the "controlled buy". Such
meeting took place with several police officers at
which time King and his 1969 Cadillac were
searched, and he was given $150. King then drove
to the Dolbee address and went to the upstairs
apartment where he was let in by defendant. After
King inquired regarding the drugs defendant indi-
cated he had to "* * * pick up something * * *".
He then left with Sharon McCoy's daughter, Nicki.
Defendant came back approximately ten minutes
later and said that Officer Hoatlin was outside.
Sharon McCoy and several other persons were
present but King did not know their names. He
did indicate, however, that they were "shooting
heroin" while he was there.

After defendant's statement concerning Hoatlin,
King testified that defendant told Sharon McCoy
"* * * don't let nobody walk with any dope * * *".
He then handed an aluminum foil packet a couple
of inches long and perhaps an inch and a half wide
to Sharon McCoy and left.

King approached Sharon McCoy and asked her
"* * * to fix me up a nice package for $150 * * *".
She went into the bathroom and after coming out
she placed a brown paper package in his shirt.
King left and drove to meet Officer Hoatlin to
whom he gave the brown package after marking
it.

King, in response to a question from the prose-
cutor, indicated that he had on two previous occa-
sions bought heroin from defendant. Defendant
objected. The court overruled defendant's objection
with respect to the admissibility of such testimony
but instructed the jury that it was to be considered
solely for the purpose of "* * * looking to defen-
dant's motive, intent, plan, scheme, mistake, or

accident and is not to be taken * * * as substantive evidence of the facts in this case * * *".

King testified that the earlier purchases by him from the defendant took place at defendant's house on Benjamin in early 1976. He further testified that he sold heroin to defendant a number of times preceding the alleged purchase of August 26, 1977. He stated that he never saw Sharon McCoy while she was in the bathroom and that it was not until the defendant left the premises that he asked for the packet. While he saw defendant transfer to Sharon McCoy a packet of aluminum foil, he never saw what was in it.

Terrance Hoatlin testified that he had been employed as a Grand Rapids police officer for 15 years and was assigned to the vice squad in August of 1977. He stated that King contacted him at approximately 9 a.m. on August 26, 1977, and as a result Hoatlin and Officer Nicholson searched him and his vehicle and then followed him to McCoy's residence in their vehicles at approximately 9:26 a.m. The surveillance consisted of Officers Hoatlin, Nicholson, and Elenbaas. Three vehicles were used and were parked near the Dolbee address. Hoatlin testified that from the time King first called him until the time he turned over the package to him 58 minutes elapsed. To make the purchase, the police gave King $150 in cash. King was observed entering the Dolbee apartment at 9:36 a.m. Defendant was observed leaving the apartment at 9:51 a.m. Defendant, after he initially left the premises was observed returning at 9:43 a.m. At the time that defendant returned he had a young black female with him. They exited from the vehicle and went to the apartment. After King left the apartment, he drove away and met the officers who then searched him. At that point the brown paper

bag was turned over to police with King's number marked on it. Hoatlin testified that defendant was not arrested immediately because King was still making "controlled buys" for them and to have done so would have "blown his cover". No fingerprints were ever obtained from the bag.

The other two officers who accompanied Hoatlin generally corroborated his testimony and a police chemist testified that the material delivered by King to Officer Hoatlin was heroin.

Charles Nagle testified that he made "controlled buys" for the Grand Rapids Police Department during 1976 and that on May 24, 1976, he purchased heroin from defendant at 511 Benjamin, S.E., Grand Rapids, Michigan. In making his purchase he followed the normal search procedure established by police. Mr. Nagle described the transaction. Defense counsel objected to this testimony but the trial judge again ruled that the testimony was admissible under the similar acts statute and so instructed the jury.

Charles Wright Brown, Jr., testified that he was 28 years old, employed by General Motors, and knew the defendant. He testified that he was at the Dolbee address on August 26, 1977, sometime between 9:15 a.m. and 9:45 a.m. for the purpose of collecting some money from Sharon McCoy. He testified that he was there but a few minutes when he heard defendant say "* * * the police is outside, you all be cool * * *". The door was then closed and defendant left. Brown then left. He did not see Sharon McCoy receive any packages from defendant.

On cross-examination Brown testified that he saw two other persons there whom he had never seen before and that they were not doing anything in particular. He further testified that he did not

receive the money that was owed to him. He testified that he never saw King.

Prior to defendant's taking the stand defense counsel moved to exclude, for impeachment purposes, evidence of the defendant's conviction in 1976 for attempted delivery of heroin. This conviction arose out of the sale by defendant to Charles Nagle on May 24, 1976. The trial court denied the motion because the prior conviction was similar to the charged offense.

On appeal, defendant first claims that the trial court committed reversible error in admitting into evidence under MCL 768.27; MSA 28.1050, the similar acts statute, evidence of defendant's prior acts of selling and purchasing heroin with respect to witness King and defendant's prior act of selling heroin to witness Nagle. We agree.

Generally, evidence of a criminal defendant's prior bad acts is inadmissible because its probative value is outweighed by the prejudice to the defendant. *People v Wilkins,* 82 Mich App 260; 266 NW2d 781 (1978). The Supreme Court of Michigan, however, has adopted MRE 404(b) as an exception to this general rule,[1] which provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are

---

[1] On March 1, 1978, the second day of defendant's trial, MRE 404(b) came into effect, superseding the similarly phrased similar acts statute, MCL 768.27; MSA 28.1050. *People v Delgado,* 404 Mich 76, 81, fn 3; 273 NW2d 395 (1978). The case law interpreting the statute, however, has been embodied in the evidentiary rule. *People v Crawford,* 83 Mich App 35; 268 NW2d 275 (1978).

contemporaneous with, or prior or subsequent to the crime charged."

In *People v Rustin,* 406 Mich 527; 280 NW2d 448 (1979), the Supreme Court held that a trial court committed reversible error when, under the authority of the similar acts statute, it admitted evidence of prior sales of controlled substances by defendant Rustin as bearing on his intent and scheme in perpetrating another controlled substance sale five days later for which he was on trial. The same undercover agent was involved in both of the narcotics transactions. Rustin denied any participation in the sale for which he was on trial. The Supreme Court found that the mere fact that the two sales of heroin were close in time did not, by itself, make the prior sale admissible to show a "scheme or plan" under the statute. It was also found that defendant's general denial of his participation did not suffice to put his lack of intent in issue as required by the statute.

The instant case is similar to *Rustin* in that the prosecution seeks to introduce evidence of alleged prior heroin transactions by defendant several months previous to the transaction for which he was on trial. Defendant Austin, similar to Mr. Rustin, denied any participation in the instant sale. Thus, defendant's intent could not have been sufficiently in issue to permit the prior bad act evidence to be introduced to prove his intent. Furthermore, just as in *Rustin,* there is no evidence of a scheme other than the similar heroin sales. Bad act evidence tending to prove a scheme was thus inadmissible for this purpose also.

We note in passing that *People v Wilkins, supra,* stated an exception to the rule which requires that intent be in dispute when defendant is being tried for the crime of conspiracy. *Id.* at 270. *Wilkins*

cited *People v Ormsby,* 310 Mich 291; 17 NW2d 187 (1945), and *People v McCrea,* 303 Mich 213; 6 NW2d 489 (1942), as support for this proposition. Both of those cases, however, deal with similar acts of the defendant which were both contemporaneous with and integrally related to the charged conspiracy. This is not the situation in the case at bar where the alleged similar acts are neither contemporaneous with the charged conspiracy of August 26, 1977, nor integrally related thereto. For this reason the conspiracy exception stated in *Wilkins* does not alter our application of *Rustin.*

Moreover, in *People v Delgado,* 404 Mich 76; 273 NW2d 395 (1978), the Supreme Court established an alternative theory for the admission of bad acts evidence:

" 'Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime.' [Citation omitted.]" *Id.* at 83.

In *Delgado* the prosecution sought to introduce evidence of prior heroin sales by defendant to an undercover agent. The terms of the prior sale were that, if the agent found the heroin which he just purchased to be satisfactory, he would return to defendant and buy an even larger quantity. Defendant was on trial for the sale of this larger quantity. The Court found the evidence of the prior sale to be properly before the jury since this similar bad act was "blended" with the offense for which defendant was on trial.

In the instant case, however, the evidence of defendant's participation in previous heroin sales with the same informant was not inextricably blended with the offense for which defendant was

tried. Indeed, they were several months apart. There is no evidence in the record that, as in *Delgado,* defendant was to sell more heroin to the informant if the latter was satisfied with the drugs he first bought from defendant. Nor is there evidence in the record, as in *Delgado,* to show that any prior heroin transactions perpetrated by defendant were a cause of the instant transaction for which he was convicted. Thus, *Delgado* can not be used to justify the admission of defendant's alleged participation in previous heroin sales.

The admission of this bad acts evidence was reversible error since it was reasonably possible that in any proceeding free of this error one juror might have voted to acquit. *People v Flores,* 89 Mich App 687; 282 NW2d 183 (1979), *People v Wilkins, supra.* See also, *People v Rustin, supra.*

We also agree that reversible error was committed when the trial court ruled that defendant's 1976 conviction for attempted delivery of heroin could be used for the purposes of impeachment.

In *People v Baldwin,* 405 Mich 550; 275 NW2d 253 (1979), the Supreme Court held that a trial court commits error when it considers the similarity of a prior conviction as an element in favor of admissibility. See also, *People v Crawford,* 83 Mich App 35; 268 NW2d 275 (1978).

Plaintiff agrees that the trial court committed error with respect to the admission of the 1976 conviction but contends that this evidence was independently admissible under MRE 404(b). Having ruled such evidence was improperly admitted under the above rule, plaintiff's claim is without merit.

We address two other issues raised by defendant and consider them only to the extent that they may recur on retrial.

Officer Nicholson who testified in plaintiff's case in chief was allowed to repeat a portion of his previous testimony on rebuttal. This was at most harmless error but should be avoided on retrial. *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974).

Prior to the trial, defendant moved to endorse Nicki Thomas, Ms. McCoy's daughter, as a witness. The motion was denied on the basis that she was not a res gestae witness. During the trial, defendant proposed an instruction to the effect that the unknown persons seen by Doug King at Ms. McCoy's apartment were res gestae witnesses, that the prosecution did not use due diligence in producing them, and so the jury could infer that their testimony would have been unfavorable to the prosecution. In response, the trial court gave the following jury instruction:

"Now, there has been some question concerning the identity of the people there at the scene. It is the claim of the People that the people in the police department have no information as to the identity of the persons who were there at the scene. It is a rule of law that if any person sees a crime being committed and is right there in its presence, it is the duty of the People to produce those witnesses who are known as res gestae witnesses who witnessed the particular crime. In this case it is the claim of the People that they do not know who those other people were or that they were participating in illegal acts there on the premises. If so, they would be excused from having to appear. But if you should find that they are just innocent bystanders or bystanders who witnessed the crime, then it would be the duty of the People to produce them because they were present at the 546 Dolbee. The people did not produce these witnesses and if they were required to do it, you can infer, therefore, that the testimony of at least two people would have been unfavorable to the prosecution."

Defense counsel objected to this instruction on the basis that even if the persons on the scene were acting illegally in using heroin, they would still be res gestae witnesses for purposes of the production requirement unless they were accomplices to the crime charged. The trial court declined to instruct the jury further.

A res gestae witness is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged offense. *People v Hadley,* 67 Mich App 688; 242 NW2d 32 (1976). Every reasonable doubt as to whether a witness is a res gestae witness should be resolved in favor of endorsing and calling the witness. *People v Harrison,* 44 Mich App 578; 205 NW2d 900 (1973). We find that the trial court erred in denying defendant's request to endorse Nicki Thomas. We find that she was a res gestae witness, in view of King's testimony that she accompanied the defendant when he went to pick up the alleged heroin. On remand, she should be endorsed and produced at trial.

We also find that the issue of whether the prosecutor was excused from endorsing or producing the other persons at the McCoy apartment was erroneously submitted to the jury. This is a question of law for the trial court's determination. *People v Willie Pearson,* 404 Mich 698, 721; 273 NW2d 856 (1979).

The other persons present in the apartment during the alleged delivery of heroin were also res gestae witnesses. The fact that King did not know them by name is not dispositive. The prosecutor and police have the duty to make inquiries of known persons who may have the information in an attempt to locate them, following any leads

which are available. See *People v Carter,* 87 Mich App 778, 785; 276 NW2d 493 (1979), *People v Starr,* 89 Mich App 342, 346; 280 NW2d 519 (1979). There is no indication that these persons who were present in Ms. McCoy's apartment were known only to the defendant, thus excusing the prosecutor from the obligation to produce them under *People v Gillam,* 93 Mich App 548; 286 NW2d 890 (1979).

Moreover, the accomplice exception to the prosecutor's duty to endorse and produce res gestae witnesses encompasses only such persons who participated in or were involved in the crime charged. *People v Lyle Brown,* 37 Mich App 25, 29; 194 NW2d 450 (1971), *People v Phillips,* 61 Mich App 138, 149; 232 NW2d 333 (1975). While an accomplice need not be formally charged before the informant exception becomes applicable, *People v Potts,* 55 Mich App 622, 627; 223 NW2d 96 (1974), the mere fact that the persons in the McCoy apartment may have been engaged in an illegal use of heroin does not, in and of itself, render them the defendant's accomplices in the alleged delivery of heroin to King. Since King never indicated any participation by these others, the trial court may not consider the conspiracy exception.

On remand, the trial court must conduct a hearing to determine whether the prosecutor has exercised due diligence in seeking these witnesses. *People v Pearson, supra.* The adverse witness instruction of CJI 5:2:14(3) is not appropriate unless the trial court finds that there was a lack of due diligence. *Pearson, supra,* 404 Mich at 722. If these persons were res gestae witnesses and cannot be produced at the new trial, the trial court will determine whether the defendant was prejudiced by their nonproduction after the jury returns a

verdict, and if so, will fashion an appropriate remedy as required by *Pearson, supra,* 404 Mich at 723.

Defendant's final contention that there was insufficient evidence as a matter of law to sustain defendant's convictions is without merit.

Reversed and remanded for a new trial in accordance with this opinion.