PEOPLE v BROWN

PEOPLE v RANGEL

Docket Nos. 78-4920, 78-4921, 78-4922, 78-4923, 46502, 46503, 46504, 46505. Submitted August 21, 1980, at Lansing.—Decided April 7, 1981. Leave to appeal applied for.

Howard Brown was convicted in Bay Circuit Court of four counts of forgery and four counts of uttering and publishing. Following conviction, Brown pled guilty to a supplemental information charging him with being a second-time habitual offender. Sylvia Rangel, a codefendant of Brown, was convicted of four counts of forgery in Bay Circuit Court and subsequently pled guilty to charges of being a third-time habitual offender. Brown was sentenced to eight concurrent terms of from 6 to 21 years in prison and Rangel was sentenced to serve five years on probation, John X. Theiler, J. The charges arose out of the cashing of four personal checks bearing the name of Kraxner by Julie Reif. Reif allegedly had been induced by defendant

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 4, 723, 724.
  81 Am Jur 2d, Witnesses §§ 2, 481.
  Necessity and sufficiency of corroboration. 9 L Ed 2d 441.
[2] 63 Am Jur 2d, Prosecuting Attorneys § 27.
  81 Am Jur 2d, Witnesses § 2.
[3-5] 29 Am Jur 2d, Evidence §§ 300, 322.
  30 Am Jur 2d, Evidence § 1143.
[6] 5 Am Jur 2d, Appeal and Error § 948.
[7] 5 Am Jur 2d, Appeal and Error §§ 717, 948.
  29 Am Jur 2d, Evidence § 320.
[8] 75 Am Jur 2d, Trial § 166.
[9] 75 Am Jur 2d, Trial § 166.
[10] 81 Am Jur 2d, Witnesses §§ 619-625.
[11] 21 Am Jur 2d, Criminal Law § 527.
  Defendant's right to disclosure of presentence report. 40 ALR3d 681.
[12, 13] 79 Am Jur 2d, Welfare Laws § 50.
[14] 5 Am Jur 2d, Appeal and Error § 976.
  29 Am Jur 2d, Evidence § 320.
[15-19, 20] 29 Am Jur 2d, Evidence § 320 *et seq.*

Brown to cash the checks, which allegedly had been forged by defendant Rangel to make the checks payable to Debra Tacey. Identification papers were stolen from Debra Tacey by Stacey Huff, who gave the identification papers to Woodrow Blakely, who, in turn, allegedly gave them to defendant Brown. The identification papers were used for purposes of identification in order to cash the checks. Testimony was introduced at trial regarding defendant Brown's possession of stolen checks in the name of Van Wormer, which he allegedly sought to have cashed by Julie Reif shortly after the Kraxner checks were negotiated. Testimony regarding a third set of checks, in the name of Hardy, which were found during a search of the house where Brown and Rangel allegedly induced Reif to cash the Kraxner checks was also admitted into evidence. Both defendants appeal, raising numerous issues. *Held:*

1. Woodrow Blakely, the man from whom defendant Brown allegedly received the stolen indentification used by Julie Reif, although present early in the trial under a defense subpoena, was neither endorsed nor produced by the prosecutor during the trial. The issue of Blakely's production was fully discussed by the trial court, which ruled that if Blakely had passed the identification to Brown in the hope and expectation that it was going to be used illegally, the prosecutor would not be required to endorse him as a res gestae witness. The defense was given the opportunity to call Blakely and cross-examine him without adopting his testimony as that of a defense witness. Both defendants claim on appeal that Blakely was a nonaccomplice res gestae witness whom the prosecutor was obligated to produce. The trial court's ruling that the prosecutor was not obligated to endorse Blakely as a res gestae witness is affirmed. A res gestae witness is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged offense. Blakely does not fit this definition.

2. Defendants contend that the trial court erred by admitting into evidence certain testimony regarding Brown's possession of stolen checks in the name of Van Wormer and testimony that a third set of checks, in the name of Hardy, were found under a bed in the house where Brown and Rangel allegedly induced Reif to cash the Kraxner checks. The challenged testimony was introduced on the prosecutor's behalf as evidence of similar acts, the Van Wormer checks against Brown only, and the Hardy checks against both Brown and Rangel. In both instances, the defendants objected on the grounds of inadmissibil-

ity, but the objections were overruled. The prosecutor argues that evidence as to both sets of checks was admissible as similar acts evidence to show "scheme, common plan, identity, preparation or system". The evidence regarding the Van Wormer checks was admissible as similar acts evidence because it tended to establish Brown's plan or system for securing money by having stolen checks cashed by another person, Julie Reif, who would then split the money with him. Also, because of the distinguishing characteristics of the scheme, the similar acts evidence tends to establish that Brown committed the charged offense. The evidence regarding the Hardy checks was not admissible against either of the defendants. There was no evidence that either defendant was responsible for the presence of the checks under the bed. The trial court erred in overruling the defendants' objections to the admission of testimony as to the Hardy checks. However, the error was harmless because, due to the strength of the people's case and the dubious evidentiary value of the Hardy check testimony, there is no reasonable chance that defendants would have been acquitted if such testimony had not been introduced.

3. Defendants' claims of prosecutorial misconduct during the opening statement and closing argument and the prosecutor's apparent attempt to impeach a voluntarily-endorsed witness were not preserved for appellate review because there was no objection made at trial as to the remarks and no manifest injustice resulted from the challenged comments or the impeachment issue. The prosecutor was legitimately surprised by the witness's refusal to testify in accordance with her preliminary examination testimony. The rules of evidence permit a calling party to impeach his own witness where the witness's testimony is contrary to that which the calling party had anticipated and was actually injurious to the calling party's case.

4. Defendant Brown claims error with regard to one portion of the jury instructions and requests remand for resentencing because certain challenges made to allegedly inaccurate information in the presentence report were never addressed by the sentencing judge. The challenged jury instruction stated that it had been shown that Brown had a criminal record and that he had certain convictions, when, in fact, this had not been shown. The prosecutor called the court's attention to its misstatement and the jury was instructed to disregard the remark. Brown was not irreparably prejudiced by the court's statement. Brown's request for remand for resentencing is premised on the trial court's failure to respond to his allegations that inaccurate

information was contained in his presentence report. While the court never stated that the sentence imposed was based in any part on the challenged information, it was never clearly indicated that the court would ignore the information. Inaccurate information has no place in a presentence report and, where it is not clear that the trial court ignored such information in sentencing the defendant, remand is required. The case is remanded for a hearing at which the trial court shall determine whether the invalid information affected its sentencing decision.

5. Defendant Rangel claims error in the admission into evidence of certain Department of Social Services documents bearing examples of her handwriting and requests remand for a hearing because certain misdemeanor convictions obtained while defendant was without counsel were noted on her presentence report. The admission of the Department of Social Services forms was not reversible error. No information was divulged to the jury which could not have been secured under the statute which protects such forms from disclosure. The substance of the statute purports only to restrict public access to personal history information. The policy underlying the limited disclosure statute was not violated because nothing in the nature of personal history information appears to have been introduced below. The evidence was properly admitted at trial.

6. Defendant Rangel next asserts that she was prejudiced when the jury was informed of her status as a welfare recipient. The admission of this information was not objected to below and the record discloses no manifest injustice.

7. The rule that an appellate court will remand for resentencing where the trial record shows that the sentencing court considered an invalid conviction pertains only to felonies, not misdemeanors.

Defendant Brown's convictions are affirmed and the case is remanded for an evidentiary hearing to determine whether the trial court's sentencing decision was affected by the inaccurate information contained in Brown's presentence report.

Defendant Rangel's convictions are affirmed.

N. J. KAUFMAN, J., concurred in the result.

R. M. MAHER, J., dissented. He would hold that the trial court erred reversibly by admitting into evidence similar acts testimony concerning the Van Wormer and Hardy checks. He would reverse and remand for new trials as to both defendants.

OPINION OF J. H. GILLIS, P.J.

1. WITNESSES — CRIMINAL LAW — WORDS AND PHRASES — RES GESTAE WITNESS.

*A res gestae witness is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged offense.*

2. WITNESSES — CRIMINAL LAW — RES GESTAE WITNESSES — PURPOSE OF ENDORSEMENT AND PRODUCTION.

*The rule requiring the endorsement and production of res gestae witnesses is directed at preventing the suppression of evidence, protecting a defendant from false accusations, and promoting full disclosure of the entire criminal transaction.*

3. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS EVIDENCE — ADMISSIBILITY OF EVIDENCE.

*Similar acts evidence, to be admissible, must generally have a tendency either to identify a defendant as the unknown actor in an alleged criminal act or to negate the suggestion that the act in question was not criminal because it was unintended, accidental, a mistake or otherwise innocent.*

4. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS EVIDENCE — ADMISSIBILITY OF EVIDENCE — STATUTES.

*Four propositions must be established before similar acts evidence is admissible: (1) the criminal act in question must have distinguishing, peculiar or special characteristics; (2) the similar act must also bear these characteristics; (3) the similar act must have been performed by the defendant; and (4) the crime in question must have been committed by the defendant (MCL 768.27; MSA 28.1050).*

5. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS — ADMISSIBILITY OF EVIDENCE — BURDEN OF PROOF.

*There must be substantial evidence indicating that a defendant probably committed a particular similar act before evidence of that similar act may be offered against him.*

6. APPEAL — CRIMINAL LAW — ERROR — REVERSAL.

*Error requires reversal when it is offensive to the maintenance of a sound judicial system or where it is reasonably possible that one juror might have voted to acquit the defendant in a trial free of the claimed error.*

7. APPEAL — CRIMINAL LAW — SIMILAR ACTS EVIDENCE — ERRONEOUS
   ADMISSION OF EVIDENCE — REVERSAL.

*The erroneous introduction of similar acts evidence is not so
offensive to the maintenance of a sound judicial system as to
require reversal.*

8. APPEAL — FAILURE TO OBJECT — MANIFEST INJUSTICE.

*Matters unobjected to at the trial level are not preserved for
appellate review unless manifest injustice would result.*

9. APPEAL — CRIMINAL LAW — PROSECUTOR'S REMARKS — FAILURE TO
   OBJECT — PREJUDICE.

*Failure of a defendant to object at trial to allegedly prejudicial
remarks of the prosecutor bars appellate review unless the
prejudice is so egregious that it cannot be cured by judicial
instruction; the prosecutor's remarks must be read as a whole
and be evaluated in light of the relationship or lack of relation-
ship they bear to the evidence admitted at trial.*

10. WITNESSES — IMPEACHMENT — RULES OF EVIDENCE.

*A calling party may impeach his own witness where the witness's
testimony is contrary to that which the calling party had
anticipated and is actually injurious to the calling party's case;
the purpose for allowing such impeachment is to show the jury
why the witness was called (MRE 607[2][C]).*

11. CRIMINAL LAW — SENTENCING — PRESENTENCE REPORT — INAC-
    CURATE INFORMATION — REMAND.

*Inaccurate information has no place in a presentence report and
where it is not clear that the trial judge ignored such informa-
tion in sentencing a defendant, remand is required.*

12. CRIMINAL LAW — WELFARE INFORMATION — UTTERING AND PUB-
    LISHING — FRAUD — STATUTES.

*It is unlawful for any person to utter or publish the names,
addresses, or other information regarding applicants for, or
recipients of, any form of aid or relief under the terms of the
Social Welfare Act except in cases where fraud is charged or
wrongful grant of aid is alleged (MCL 400.64[1]; MSA 16.464[1]).*

13. SOCIAL SERVICES — WELFARE — RECIPIENTS AND APPLICANTS —
    DISCLOSURE OF INFORMATION — STATUTES.

*The disclosure provision of the Social Welfare Act does not
permit release of a welfare recipient's file or forms although it
does permit the disclosure of names and addresses of recipients*

*and applicants to members of the public who submit a signed application therefor (MCL 400.64[1]; MSA 16.464[1]).*

14. Criminal Law — Sentencing — Consideration of Counselless Convictions — Remand.

*A defendant's prior felony convictions which were secured without the defendant having the benefit of counsel may not be considered by a sentencing judge and, where the record shows that the sentencing judge considered such a conviction, an appellate court should remand for resentencing; this rule does not apply to misdemeanor convictions where a defendant had no benefit of counsel.*

Dissent by R. M. Maher, J.

15. Criminal Law — Evidence — Evidence of Other Bad Acts — Admissibility of Evidence — Rules of Evidence.

*Evidence of other bad acts by a defendant, generally inadmissible because its probative value is often outweighed by the possibility that the trier of fact will forego an objective determination of the defendant's guilt and infer guilt from the fact that he or she engaged in similar conduct in the past, may be admitted for certain limited purposes such as showing proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged (MRE 404[b]).*

16. Criminal Law — Evidence — Evidence of Other Bad Acts — Admissibility of Evidence.

*Evidence of other bad acts by a defendant, although not admissible to directly infer that the defendant committed the crime charged because he or she has been engaged in wrongdoing in the past, may have value in establishing a disputed element or other aspect of the offense.*

17. Criminal Law — Evidence — Evidence of Other Bad Acts — Admissibility of Evidence.

*Evidence of other bad acts by a defendant, in order to be admissible for purposes of establishing a disputed element or other aspect of an offense, must first qualify the act as a similar act; this involves the direct proof of the following three propositions which, if shown, leads to the permissible inference that it was the defendant who committed the crime, or that the acts which were undeniably committed by the defendant were criminal rather than unintended, accidental, or otherwise innocent: 1)*

*that the manner in which the criminal act in question or some significant aspect of it was performed bore certain distinguishing, peculiar or special characteristics; 2) that certain specific similar acts, performed contemporaneously with or prior to or subsequently to the act in question, bore the same distinguishing, peculiar or special characteristics; and 3) that the similar acts were performed by the defendant.*

18. CRIMINAL LAW — EVIDENCE — EVIDENCE OF OTHER BAD ACTS — ADMISSIBILITY OF EVIDENCE.

*Evidence of other bad acts by a defendant, in order to qualify those acts as similar acts, must show distinguishing, peculiar or special characteristics which are common to the acts and thus personalize them and make them the defendant's "signature" which identifies him as the perpetrator, or, if his identity is not contested, negates the suggestion that his behavior in performing the challenged act was unintended, accidental, a mistake, or otherwise innocent; it is not enough that the act involves the same crime or violates the same statute under which the defendant is presently charged.*

19. CRIMINAL LAW — EVIDENCE — EVIDENCE OF OTHER BAD ACTS — ADMISSIBILITY OF EVIDENCE — RULES OF EVIDENCE.

*Once it is established that testimony concerning other bad acts by a defendant is truly similar acts testimony, it must qualify for admission on two levels: 1) it must be probative of one or more of the purposes for which such evidence is admissible under the court rule, and 2) one or more of those purposes must be material, i.e., a proposition in issue in the case (MRE 404[b]).*

20. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS EVIDENCE.

*The mere fact that a defendant has committed the crime charged in a similar manner on other occasions does not establish a scheme, plan, or system.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Patrick O. Duggan,* Assistant Prosecuting Attorney, for the people.

*Peter Jon Van Hoek,* Assistant State Appellate Defender, for defendants on appeal.

Before: J. H. GILLIS, P.J., and N. J. KAUFMAN and R. M. MAHER, JJ.

J. H. GILLIS, P.J. Codefendants Howard Brown and Sylvia Rangel were each charged with four counts of forgery, MCL 750.248; MSA 28.445, and four counts of uttering and publishing, MCL 750.249; MSA 28.446. Defendant Brown was convicted as charged and subsequently pled guilty to a supplemental information charging him with being a second-time habitual offender. He was sentenced to serve eight concurrent sentences of from 6 to 21 years in prison. He now appeals as of right. Before trial, the prosecutor moved to dismiss the uttering and publishing charges against defendant Rangel. She remained charged with four counts of forgery and was convicted as charged. She subsequently pled guilty to a supplemental information charging her with being a third-time offender. She was sentenced to serve 5 years on probation.

Both defendants raise a multitude of issues with regard to the lower court proceedings. Specific facts will be discussed as each issue is considered. Generally, however, the testimony and exhibits presented at trial indicated that, in May, 1977, Brown induced Julie Reif to cash four stolen checks in the name of Kraxner, which were forged by Rangel and negotiated by Reif through the use of stolen identification belonging to Debra Tacey. After cashing the checks, Ms. Reif retained one-half of the cash received and gave the other half to Brown. The stolen identification was traced from Debra Tacey to Stacey Huff, who gave it to her boyfriend, Woodrow Blakely. When Brown gave Ms. Reif the forged checks, made payable to Debra Tacey by Rangel, he also handed her Ms. Tacey's identification.

I

At trial, testimony indicated that defendant Brown might have received Debra Tacey's identification directly from Woodrow Blakely, Stacey Huff's boyfriend. Ms. Huff testified that, after she took Ms. Tacey's wallet from her purse, and removed a small amount of money from it, she threw the wallet in a trash bin. Later, she retrieved the wallet and gave it to Blakely at his request. Subsequently, Ms. Huff and Blakely encountered defendant Brown and the two men entered a bar together at a time Huff thought Blakely might have had the stolen identification on his person. Although Blakely had been present under a defense subpoena at some earlier point in the trial,[1] he was not endorsed or produced by the prosecutor at trial.

When the prosecutor questioned Brown about Blakely, during Brown's case in chief, the issue of Blakely's production was fully discussed by the trial court. Noting that Blakely was convicted of receiving and concealing the stolen identification, the court ruled that if Blakely had been a party to passing the identification to Brown "in the hope and expectation that [it was] going to be used illegally", regardless of whether Blakely was a

---

[1] On cross-examination, defendant Brown testified as follows:

"*Q.* Mr. Brown, you indicated that you know Mr. Blakely pretty well.

"*A.* Yes. I have known him.

"*Q.* And he's a friend of yours; is he not?

"*A.* He's an acquaintance of mine.

"*Q.* He's been over here in court here a couple of times during the course of this trial; has he not?

"*A.* He was subpoenaed.

"*Q.* By you? By your attorney?

"*A.* Uh-huh. Is that the way? Subpoena?

"*Q.* Yeah.

"*A.* Okay."

"formal accessory" or "merely a link in the chain", the prosecutor would not be required to endorse him. The defense was given the opportunity to call Blakely and cross-examine him without adopting his testimony as that of a defense witness.

Both defendants now claim on appeal that Blakely was a nonaccomplice, res gestae witness whom the prosecutor was obligated to produce. The prosecutor responds by arguing that Blakely was not a res gestae witness or that, if he was, the trial court properly ruled that he was an accomplice.

We affirm the trial court's ruling that the prosecutor was not obligated to endorse Blakely as a res gestae witness. Our conclusion on the issue stems from our belief that Blakely was not a res gestae witness.

*People v Austin,* 95 Mich App 662, 674; 291 NW2d 160 (1980), defined a res gestae witness as "one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged offense". The criminal transaction with which the defendants were charged involved forgery and uttering and publishing. The factual premise for the charges was the defendants' involvement in the use of a third party's checks to secure cash from a bank through the use of stolen identification. Nothing in the record suggests that Blakely was involved in this transaction. More importantly, there is no part of the transaction which could be more fully disclosed through Blakely's testimony. Julie Reif's testimony established Brown's possession of the stolen checks and stolen identification. Four bank tellers identified their teller stamps on the can-

celed checks, thus establishing that the checks were cashed through the use of the stolen identification—the driver's license number on the back of each check was that assigned to Ms. Tacey.

The rule requiring the endorsement and production of res gestae witnesses is directed at preventing the suppression of evidence, *Bonker v People,* 37 Mich 4, 8 (1877), protecting the defendant from false accusations, and promoting full disclosure of the entire criminal transaction. *People v Abrego,* 72 Mich App 176, 179; 249 NW2d 345 (1976). Blakely's presence at trial for purposes of cross-examination by the defense attorney would not have materially affected the jury's understanding of either defendant's involvement in the forgery or uttering and publishing of the checks. To paraphrase the Court in *Bonker,* "The record discloses no fact that renders it at all material [how] the defendants [received possession of the stolen identification]. * * * Evidence as to how or why [they got possession] was proper as introductory or explanatory, but nothing depended upon it." 37 Mich 4, 7. We thus affirm the trial court's ruling that Blakely was not required to be endorsed or produced by the prosecutor.

## II

Defendants also take issue with the admission into evidence of certain testimony regarding Brown's possession of stolen checks in the name of Van Wormer, which he allegedly asked Julie Reif to cash shortly after the Kraxner checks were negotiated, and testimony that a third set of checks in the name of Hardy were found under a bed during the execution of a search warrant at 1218 North Van Buren, the house where Brown and Rangel induced Reif to cash the Kraxner

checks. The challenged testimony was introduced on the prosecutor's behalf as evidence of similar acts, the Van Wormer checks against Brown only, the Hardy checks against both Brown and Rangel. In both instances, the defendants objected on the grounds of inadmissibility, but the objections were overruled.

In *People v Major,* 407 Mich 394; 285 NW2d 660 (1979), the Michigan Supreme Court analyzed the admissibility of similar acts evidence, beginning with the proposition that the legitimacy of such evidence "generally is its tendency either to identify the defendant as the unknown actor in an alleged criminal act or to negate the suggestion * * * that the act in question * * * was not criminal because it was unintended, accidental, a mistake or otherwise innocent". 407 Mich 394, 398. In the case at bar, the prosecutor argues that evidence as to both sets of checks was admissible to show "scheme, common plan, identity, preparation or system".

Four propositions must be established before similar acts evidence is admissible under MCL 768.27; MSA 28.1050. First, the criminal act in question must have "distinguishing, peculiar or special characteristics". *Major, supra,* 398. Second, the similar act must also bear these characteristics. *Id.* Third, the similar act must have been performed by defendant. *Id.* The fourth proposition arises as an inference from the first three, that is, that the crime in question was committed by the defendant. *Id.* See, also, *People v Horton,* 98 Mich App 62; 296 NW2d 184 (1980).

It is our conclusion that the evidence regarding the Van Wormer checks meets the foregoing admissibility requirements. Defendant Brown's defense was that he was not involved in the Kraxner

check cashing scheme. Julie Reif's testimony that shortly after Brown induced her to cash the forged Kraxner checks he asked her if she wanted to cash "some more" checks (in the name of Van Wormer) tends to establish Brown's "plan or system" for securing money by having stolen checks cashed by another person who would then split the money with him. To the extent that Reif's testimony was credible, it left no doubt that Brown was the instigator of the attempted similar act. Finally, because of the distinguishing characteristics of the scheme, the similar acts evidence tends to establish that Brown committed the charged offense. See, *e.g., People v Worden,* 91 Mich App 666, 682-683; 284 NW2d 159 (1979).

The Hardy checks found under a bed at 1218 North Van Buren present a different question entirely. This evidence was admitted as probative of the involvement of both defendants in the charged offenses. We have reviewed the record, however, and conclude that it was admissible against neither Brown nor Rangel. Our conclusion rests particularly on the fact that there was no evidence that either defendant was responsible for the presence of the checks under the bed. Inasmuch as testimony at trial indicated that many people used the house as a place to sleep or visit, or, apparently, as a house of prostitution, and given that neither Brown nor Rangel was established to be the owner or lessee of record, we cannot say with any degree of certainty that either or both should be charged with knowledge that the checks were there. As to the identity of the perpetrator of the similar act, there need only be substantial evidence indicating that "the defendant probably committed" it. *People v Cook,* 95 Mich App 645, 655-656; 291 NW2d 152 (1980). We do not find the required quantum of evidence on

this element. Thus, the trial court erred in over-ruling the defendants' objections to the admission of testimony as to the Hardy checks.

The admission into evidence of the Hardy checks does not require reversal, however. Error requires reversal when it is "offensive to the maintenance of a sound judicial system" or where it is reasonably possible that one juror might have voted to acquit the defendant in a trial free of the claimed error. *People v Adan,* 83 Mich App 326, 333-334; 268 NW2d 397 (1978). As this Court has already ruled, the erroneous introduction of similar acts evidence is not so offensive to the maintenance of a sound judicial system as to require reversal. *People v Wilkins,* 82 Mich App 260, 272; 266 NW2d 781 (1978), *rev'd on other grounds* 408 Mich 69; 288 NW2d 583 (1980). Due to the strength of the people's case, and the dubious evidentiary value of the Hardy check testimony, we also find no reasonable chance that defendants would have been acquitted if such testimony would not have been introduced.

III

Defendants have jointly raised other issues with regard to prosecutorial misconduct during the opening statement and closing argument, and the prosecutor's apparent attempt to impeach a voluntarily-endorsed witness. We have reviewed the record and find no error in either instance. The prosecutor's comments during his opening statement and closing argument were not objected to by either defense attorney. Absent objection at trial, the issue has not been preserved for appeal absent a finding of manifest injustice. *People v Stinson,* 88 Mich App 672, 674; 278 NW2d 715

(1979). Where the prosecutor's remarks are challenged, "[f]ailure to object bars appellate review unless the prejudice is so egregious that it cannot be cured by judicial instruction". *People v McCracken,* 88 Mich App 286, 292-293; 276 NW2d 609 (1979). The prosecutor's remarks must be read as a whole, and a determination made whether they bore some relationship to the evidence at trial. *People v Farnsley,* 94 Mich App 34, 36; 287 NW2d 361 (1979). Our review of the record and application of the foregoing principles has convinced us that no manifest injustice resulted from the challenged comments.

Likewise with regard to the impeachment issue. The witness voluntarily endorsed by the prosecutor was Stacey Huff, the young woman who stole Debra Tacey's wallet, kept the money, and eventually gave the identification to Woodrow Blakely. Ms. Huff testified at Rangel's preliminary examination that she saw Blakely give the wallet or identification to Brown, and that she believed Blakely and Brown intended to sell the identification back to Ms. Tacey. When Ms. Huff testified at trial, during the prosecutor's direct examination, she refused to say that she had seen the wallet or identification pass between Blakely and Brown or that Blakely unquestionably had the identification with him when they met Brown that day.

MRE 607(2)(C) permits the calling party to impeach his own witness where "the witness's testimony was contrary to that which the calling party had anticipated and was actually injurious to the calling party's case". This rule is intended to allow the calling party to show the jury why the witness was called. *People v White,* 401 Mich 482, 509; 257 NW2d 912 (1977). In the instant case, the prosecutor had read the witness's preliminary examination testimony and expected her to testify at trial

to substantially the same facts. When she did not, the prosecutor was legitimately surprised, there being no evidence to indicate any prior notice that Ms. Huff would recant her initial statements. MRE 607(2)(C) is applicable, and operates to uphold the prosecutor's actions.

## IV

Each defendant raises two issues which do not affect the other. Brown asserts a claim of error with regard to one portion of the jury instructions and requests remand for resentencing because certain challenges made to allegedly inaccurate information in the presentence report were never addressed by the sentencing judge. Rangel claims error in the admission into evidence of certain Department of Social Services documents bearing examples of her handwriting and requests remand for a *Tucker*[2] hearing because certain misdemeanor convictions obtained while defendant had no counsel were noted on her presentence report.

The challenged jury instruction was given as follows:

"*The Court:* It was shown that Mr. Brown had a criminal record and it was shown that he had certain convictions.

"*Mr. Kennedy [Prosecutor]:* Your Honor, that was not shown.

"*The Court:* I'm sorry. Well, that's a serious mistake on my part. I thought there was some testimony, that was my error. Thank you very much for correcting me in that regard. So ignore those statements. The Court was absolutely incorrect in making that assumption.

"All right. The evidence is what was testified to you

[2] *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972).

by the witnesses and the exhibits that were received, and that is what you are to use in deciding the case, not other extraneous matters such as questions and answers by the attorneys, testimony by the attorneys *or misstatements by the court* or anything of that nature." (Emphasis supplied.)

Defendant Brown claims on appeal that he was irreparably prejudiced by the court's statement. We disagree. After the prosecutor called the trial court's attention to its misstatement, the jury was instructed to disregard the remark. That the prosecutor corrected the court rather than defense counsel lessened the likelihood of prejudice since the manner in which the mistake was noted left open the question whether defendant had any prior convictions at all, let alone whether evidence reflective thereof had been introduced at trial. Any prejudice which may have resulted was subsequently cured. We find no error.

Brown's remand request is premised on the trial court's failure to respond to his allegations that inaccurate information was contained in his presentence report. At the sentencing hearing, defense counsel advised the judge that defendant objected to certain hearsay allegations or suspicions regarding defendant's criminal activities which were never proven in court and thus might be more prejudicial than prior convictions. The judge's response to defendant's objections was that the police and the prosecutor "have their suspicions and they voice them". Further, the judge noted that their "suspicions aren't founded on any conviction of recent date * * *". While the judge never stated that the sentence imposed was based in any part on the challenged information, he never clearly indicated that he would ignore the information. Citing *People v McIntosh,* 62 Mich

App 422, 448; 234 NW2d 157 (1975), *modified* 400 Mich 1; 252 NW2d 779 (1977), defendant claims the case should be remanded for resentencing precisely because the trial court never indicated whether or not he was relying on the challenged information. We agree, and remand for a hearing at which the trial judge shall determine whether the invalid information affected his sentencing decision. Inaccurate information has no place in a presentence report, *People v Hildabridle,* 45 Mich App 93, 95; 206 NW2d 216 (1973), and where it is not clear that the trial judge ignored such information in sentencing defendant, remand is required.

Defendant Rangel's claim of error with regard to the prosecutor's use of her welfare application to provide examples of her signature must next be considered. The prosecutor's theory of the case, in line with Ms. Reif's testimony, was that Rangel made out the front of the Kraxner checks which Reif later cashed. Through the testimony of a handwriting expert, the prosecutor attempted to prove this theory by comparing the checks with exemplars taken from Rangel and with known samples of her handwriting (Department of Social Services forms and certain circuit court forms). When defense counsel objected to the introduction of the welfare documents because such forms are protected from disclosure by MCL 400.64(1); MSA 16.464(1), the trial court ruled that only the signature on the forms could be shown, "there being no reasons *[sic]* why anything over and beyond that may be shown". The witnesses testified, however, that the forms were completed by Rangel when she applied for welfare and when she picked up each welfare check.

Defendant claims on appeal that the documents

were not intended to be disclosed in any proceeding not dealing with fraud or a wrongful grant of aid. Alternately, defendant argues that the substance of the documents was erroneously admitted into evidence in contravention of the trial court's ruling that only the signatures were admissible and that manifest prejudice to defendant resulted.

We have reviewed the record, the statute, and the one case which has been decided under the statute, *Michigan Welfare Rights Organization v Dempsey,* 462 F Supp 227, 234 (ED Mich, 1978), and we cannot find reversible error in the admission into evidence of the forms. MCL 400.64(1); MSA 16.464(1), provides in pertinent part that "[a] person shall not utter or publish the names, addresses, or other information regarding applicants or recipients except in cases where fraud is charged or wrongful grant of aid is alleged". The prosecutor contends that, since fraud is an element of forgery, the instant case comes within the statute. We disagree. The statute relates to public welfare; it prescribes confidentiality of DSS records except in limited circumstances. There is thus no reason to construe the quoted language as referring to anything but welfare fraud. See, *e.g., Michigan Welfare Rights Organization, supra.*

The prosecutor alternately argues that he lawfully secured the documents by asking for them in the course of his criminal investigation, given that the general public has access to the names and addresses of welfare recipients and the amounts of welfare awarded to them. MCL 400.64(1); MSA 16.464(1). The statute permits the disclosure of names and addresses to members of the public who submit a signed application therefor. It does not permit release to the public of a welfare recipient's file or forms. In the instant case, the

only forms admitted into evidence were two pages of the welfare application, and certain brief documents signed by defendant when she picked up her checks. Thus, no information was divulged to the jury the substance of which could not have been secured by any one of them under the statute. Because the substance of the statute purports only to restrict public access to personal history information and because nothing of that nature appears to have been introduced below, we find that the policy underlying the limited disclosure statute was not violated, and the evidence was properly admitted at trial.

Defendant's assertion that she was prejudiced when the jury was informed of her status as a welfare recipient is also rejected. The evidence was not introduced to establish motive, nor could it have been interpreted as such given that Rangel received no known benefit from her participation in the offense. The documents were introduced and admitted without dramatics and, subsequently, utilized by defense counsel in his examination of an expert defense witness on the subject of handwriting identification. This facet of defendant's objection to the admission of the documents was not raised below, and our review of the record discloses no manifest injustice. *People v Stinson,* 88 Mich App 672, 674; 278 NW2d 715 (1979).

Defendant Rangel's final assertion of error is that she is entitled to remand for a *Tucker* hearing because her presentence report contained information regarding certain misdemeanor convictions obtained while defendant had no counsel. In *People v Moore,* 391 Mich 426, 440; 216 NW2d 770 (1974), the Michigan Supreme Court ruled that, "* * * where the record shows that the sentencing judge considered a conviction invalid under *Gideon*

[v *Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963)] an appellate court will remand for resentencing". *Gideon, supra,* involved felony convictions secured while defendant had no counsel. This case involves misdemeanor convictions allegedly secured while defendant had no counsel. There is thus no need to remand.

V

Defendant Brown's convictions are affirmed, but the case is remanded for an evidentiary hearing at which the trial court shall determine whether the inaccurate information contained in Brown's presentence report affected the court's sentencing decision. Defendant Rangel's convictions are affirmed.

Judge KAUFMAN concurs in the results reached in Judge GILLIS' opinion for the reason that he does not believe that there was any reversible error committed in the trial of the cases.

R. M. MAHER, J. *(dissenting).* I respectfully dissent, and would hold that the trial court erred reversibly by allowing into evidence similar acts testimony concerning the Van Wormer and Hardy checks.

Evidence of other "bad acts" by a defendant is generally inadmissible as its probative value is often outweighed by the possibility that the trier of fact will forego an objective determination of the defendant's guilt and infer guilt from the fact that he or she engaged in similar conduct in the past. *People v Hammer,* 98 Mich App 471, 473; 296 NW2d 283 (1980). There are, however, certain limited purposes for which such evidence may be admitted:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged." MRE 404(b).[1]

While such evidence is not admissible to directly infer that the defendant committed the crime charged because he or she has been engaged in wrongdoing in the past, it may have value in establishing a disputed element or other aspect of the offense mentioned in the court rule.

To be admissible for such a purpose the evidence must first qualify as a similar act. This involves the direct proof of three propositions which, if shown, leads to the permissible inference that it was the defendant who committed the crime, or that the acts which were undeniably committed by the defendant were criminal, rather than unintended, accidental, or otherwise innocent. Those three propositions are:

"1) that the manner in which the criminal act in question or some significant aspect of it was performed bore certain distinguishing, peculiar or special characteristics;
"2) that certain specific similar acts, performed contemporaneously with or prior to or subsequently to the act in question, bore the same distinguishing, peculiar or special characteristics;
"3) that the similar acts were performed by the defendant." *People v Major,* 407 Mich 394, 398; 285 NW2d 660 (1979). (Footnote omitted.)

---

[1] This rule went into effect shortly before defendants' trial. It superseded MCL 768.27; MSA 28.1050, which had covered the subject in a similar manner.

Furthermore, to qualify as "similar", it is not enough that the act involves the same crime or violates the same statute under which a defendant is presently charged:

"The distinguishing, peculiar or special characteristics which are common to the acts and thus personalize them are said to be the defendant's 'signature' which identifies him as the perpetrator, or, if his identity is not contested, negates the suggestion that his behavior in performing the challenged act was unintended, accidental, a mistake, or otherwise innocent." *People v Major, supra,* 398-399.

In the instant case, Julie Reif was allowed to testify, under the rubric of the similar acts rule, that defendant Brown asked her if she wanted to cash "some more" checks (the Van Wormer checks) shortly after she had cashed the checks for which defendant Brown was specifically on trial (the Kraxner checks). I do not believe that this other act was sufficiently "similar" to justify the admission of Reifs' testimony. The only similarity between the crime charged and the other act is the fact that in each instance Brown is alleged to have asked Reif to cash a check for him which was drawn on the account of a third party. This similarity does not amount to a distinguishing, peculiar, or special characteristic that personalizes the act in such a manner as to place Brown's "signature" on the transaction. Comparison may be made to the case of *People v Oliphant,* 399 Mich 472; 250 NW2d 443 (1976), where the defendant's particular method of committing sexual assaults so as to make them appear consensual justified the admission of similar acts testimony to rebut the defendant's claim that the sexual act with which he was charged was consensual. While the similar

act in the instant case involves the same crime for which defendant was on trial, this alone is not enough. *Major, supra,* 398. There must be something special about the way in which that act is committed before admission is justified, and that factor is missing in the instant case.

Even if the testimony in the instant case qualified as similar acts testimony, its admission would still be error. Once it is established that the testimony to be offered is truly similar acts testimony, it must qualify for admission on two levels:

"1) It must be probative of one or more of the * * * purposes [specified in the court rule], and 2) one or more of those purposes must be material, that is, a proposition 'in issue' in the case." *Major, supra,* 400.

The majority concludes that Reif's testimony was probative of Brown's scheme, plan, or system in doing an act. The mere fact that defendant has committed the crime charged in a similar manner on other occasions does not, however, establish a scheme, plan, or system. See *People v Rustin,* 406 Mich 527; 280 NW2d 448 (1979), *People v Austin,* 95 Mich App 662; 291 NW2d 160 (1980). While the testimony may have been probative on the question of defendant's intent or identity, it was not material as neither intent nor identity were in issue at the time the evidence was admitted. Because similar acts testimony is always prejudicial to some degree, it should not be tolerated unless there is truly a need for it, and there is no need for it until one of the purposes mentioned in the court rule is actively placed in issue. Furthermore, Brown's intent was never in issue since he denied all involvement in the crime charged. *People v Rustin, supra, People v Austin, supra.*

I am in agreement with the majority that the

evidence concerning the Hardy checks was inadmissible against both Brown and Rangel. I do not agree, however, that this error, or the error involving the Van Wormer checks, should be considered harmless. The case against Rangel, and particularly the case against Brown, was not as strong as the majority suggests. Experts were not able to say definitely that the handwriting on the checks belonged to Rangel. Brown testified in his own behalf and denied any involvement. The only testimony directly linking the defendants to the crime charged came from Reif, an alleged accomplice whose testimony and credibility were ably impeached. Under these circumstances the similar acts testimony may have tipped the scales and I believe it is reasonable that without such testimony at least one juror may have voted to acquit. *People v Austin, supra,* 672. See *People v Major, supra,* 401.

I would reverse and remand for new trials as to both defendants.